1 | **PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

2 | Name _Kimber_                    _Curtis_                         _M._
        (Last)                              (First)                          (Initial)

3 | Prisoner Number _NA 202929-6_

    Institutional Address _C/O Ann P. Williams, 2251 Nobili Ave., Santa Clara, CA 95051._

4 | (Mother and "next friend" of petitioner Curtis Kimber)

===================================================================

5 |

**UNITED STATES DISTRICT COURT**

6 |

**NORTHERN DISTRICT OF CALIFORNIA**

7 | <u>CURTIS KIMBER,</u>                         )

    (Enter the full name of petitioner in this action.)  )

8 |                                                )

                                                    )    Case No. _____

9 |        vs.                                     )

                                                    )    (To be provided by the clerk of court)

10 | ED FOULK, Executive Director of the Napa State )

                                                    )    **PETITION FOR A WRIT**

11 | (Mental) Hospital.                            )    **OF HABEAS CORPUS**

                                                    )

12 | _____            )

                                                    )

13 | _____            )

                                                    )

14 | (Enter the full name of respondent(s) or jailor in this action)  )

=====================================================================

15 |

Read Comments Carefully Before Filling In

16 | When and Where to File

        You should file in the Northern District if you were convicted and sentenced in one of these counties:

    Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa, San Benito, Santa

18 | Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in this district if you are

19 | challenging the manner in which your sentence is being executed, such as loss of good time credits, and you

    are confined in one of these counties. Habeas L.R. 2254-3(a).

20 |        If you are challenging your conviction or sentence and you were not convicted and sentenced in one

21 | of the above-named fifteen counties, your petition will likely be transferred to the United States District

    Court for the district in which the state court that convicted and sentenced you is located. If you are

22 | challenging the execution of your sentence and you are not in prison in one of these counties, your petition

23 | will likely be transferred to the district court for the district that includes the institution where you are

    confined. Habeas L.R. 2254-3(b).

24 |

25 | PET. FOR WRIT OF HAB. CORPUS

1

1 | Who to Name as Respondent

2 | You must name the person in whose actual custody you are. This usually means the Warden or

3 | jailor. Do not name the State of California, a city, a county or the superior court of the county in which

4 | you are imprisoned or by whom you were convicted and sentenced. These are not proper respondents.

5 | If you are not presently in custody pursuant to the state judgment against which you seek relief

but may be subject to such custody in the future (e.g., detainers), you must name the person in whose

6 | custody you are now and the Attorney General of the state in which the judgment you seek to attack

7 | was entered.

8 | A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE

9 | 1. What sentence are you challenging in this petition?

10 | (a) Name and location of court that imposed sentence (for example; Alameda County Superior

11 | Court, Oakland): Napa County Superior Court            Napa, California.

Court                                    Location

12 | (b) Case number, if known_CR 114643

13 | (c) Date and terms of sentence_State Prison Sentence on or about February 22, 2007

14 | (d) Are you now in custody serving this term? (Custody means being in jail, on parole or probation, etc.)

15 | Yes    ___ No √

16 | Where?

17 | Name of Institution: Prison term completed, and I am currently confined at Napa State Hospital.

18 | Address: 2100 Napa Vallejo Hwy., Napa, CA 94558

19 | 2. For what crime were you given this sentence? (If your petition challenges a sentence for

more than one crime, list each crime separately using Penal Code numbers if known. If you are

20 | challenging more than one sentence, you should file a different petition for each sentence.)

21 | I was denied my right to appeal a felony conviction for Penal Code, § 242 (felony battery).

22 |

23 |

24 |

25 | PET. FOR WRIT OF HAB. CORPUS

2

3. Did you have any of the following?

Arraignment:                                    Yes √        No

Preliminary Hearing:                            Yes √        No

Motion to Suppress:                             Yes          No √

4. How did you plead?

Guilty (Under duress)          Not Guilty          Nolo Contendere

Any other plea (specify)

5. If you went to trial, what kind of trial did you have?

Jury          Judge alone √          Judge alone on a transcript

6. Did you testify at your trial?          Yes √          No

Did you have an attorney at the following proceedings:

(a) Arraignment                     Yes √    No

(b) Preliminary hearing             Yes √    No

(c) Time of plea                    Yes √    No

(d) Trial                           Yes √    No

(e) Sentencing                      Yes √    No

(f) Appeal                          Yes √    No

(g) Other post-conviction proceeding  Yes √   No

8. Did you appeal your conviction?    Yes √    No

(a) If you did, to what court(s) did you appeal?

Court of Appeal                     Yes √    No

Year: 2002          Result:    Denied

Supreme Court of California         Yes √    No

Year: 2007          Result:    Denied

Any other court                     Yes      No √

Year:          Result:

(b) If you appealed, were the grounds the same as those that you are raising in this
PET. FOR WRIT OF HAB. CORPUS

3

1    petition?                                              Yes √        No

2    (c) Was there an opinion?                              Yes          No √

3    (d) Did you seek permission to file a late appeal under Rule 31(a)?

4                                                           Yes          No √

5        If you did, give the name of the court and the result:

6        N/A

7

8    9. Other than appeals, have you previously filed any petitions, applications, or motions with

9    respect to this conviction in any court, state or federal?        Yes          No √

10       [Note: If you previously filed a petition for a writ of habeas corpus in federal court that

11   challenged the same conviction you are challenging now and if that petition was denied or dismissed

12   with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit

     for an order authorizing the district court to consider this petition. You may not file a second or

13   subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28

14   U.S.C. §§ 2244(b).]

15       (a) If you sought relief in any proceeding other than an appeal, answer the following

16       questions for each proceeding. Attach extra paper if you need more space.

         I.      Name of Court: Did not seek other relief in federal court re this conviction.

17               Type of Proceeding: Not Applicable (N/A)

18               Grounds raised (Be brief but specific): N/A

19               a.

20               b.

                 c.

21               d.

22               Result: N/A                                Date of Result:

23       II.     Name of Court: N/A

24               Type of Proceeding: N/A

25               Grounds raised (Be brief but specific): N/A

     PET. FOR WRIT OF HAB. CORPUS

                                              4

a.
b.
c.
d.
Result:                                          Date of Result: N/A

III.    Name of Court: N/A

Type of Proceeding:

Grounds raised (Be brief but specific): N/A

a.
b.
c.
d.

Result:                                          Date of Result: N/A

IV.    Name of Court: N/A

Type of Proceeding:

Grounds raised (Be brief but specific): N/A

a.

b.

c.

d.

Result: N/A                                      Date of Result: N/A

(b)    Is any petition, appeal or other post-conviction proceeding now pending in any court?

                                                 Yes          No √

Name and location of court: N/A

## B. GROUNDS FOR RELIEF

State briefly every reason you believe you are being confined unlawfully. Give facts to support
each claim. For example, what legal right or privilege were you denied? What happened? Who
made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you
need more space. Answer the same questions for each claim.

PET. FOR WRIT OF HAB. CORPUS

[Note: You must present ALL your claims in your first federal habeas petition. Subsequent petitions may be dismissed without review on the merits. 28 U.S.C. 2244(b); McCleskey v. Zant, 499 U.S. 467, 111 S.Ct. 1454, 113 L.Ed. 2d 517 (1991).]

**Claim One:**

I was subjected to a retaliatory, selective, vindictive, and discriminatory prosecution with the use of false evidence and false testimony, because my mother provided information and evidence to the U.S. Department of Justice (USDOJ) about the abuses and fraud at my place of confinement for the USDOJ to use in their CRIPA (Civil Rights of Institutionalized Person's Act) Investigation and lawsuit (CV 06-2667 GPS), and because my mother testified against my place of confinement at the September 20, 2005, State Senator Chesbro Hearing about the abuses, deaths, dishonesty, and other malfeasance at NSH, and my mother appeared in the documentary movie titled "Psychiatry: An Industry of Death," published by the Citizens Commission on Human Rights (CCHR).

This violates my right to due process and the equal protection of the laws under both the federal and state constitutions and laws, like provisions of the California Constitution and laws, and violates my right to be free from cruel and unusual punishment pursuant to provisions of the federal and state constitution and laws. This also violates my right to be free from retaliation and my right to due process pursuant to the "First Amendment and Due Process" stipulation on page 75(J) of the Consent Judgment (CV 06-2667 GPS) the U.S. Justice Department made with Napa State Hospital on May 2, 2006, that states: "[e]ach State Hospital unconditionally permits individuals to exercise their constitutional rights of free speech, including the right to petition the government for redress of grievances without state monitoring and provides them due process."

**a. Supporting Facts:**

I was serving Penal Code, § 1026 not guilty by reason of insanity commitment at Napa State Hospital and I was falsely charged with battery and great bodily injury on a staff member. I was being abused and over- drugged with mind-altering psychiatric drugs or I would not have reacted the way I did, and there are many scientific studies conducted by reputable scientists that verify psychiatric drugs cause violence. Violence on patients and staff is a common occurrence at PET. FOR WRIT OF HAB. CORPUS

6

NSH and there are many, many, other patients at the facility that have committed many, many, acts of violence and commit violence on staff and on other patients almost daily; but they were not charged with crimes and they were not sent prison, some were not disciplined at all, and I have names and statistics verifying my claims. I was in the Napa County Jail during court proceedings, and I have brain damage, I was afraid and intimidated in court and I entered the insanity plea thinking I would go back to the mental hospital. During the sentencing proceedings held on February 22, 2007, at 1:30 P.M., defense counsel and the sentencing judge expressed that they felt sorry, were perplexed, and remarked that the probation department was just throwing up its hands and did not know what to do with me. It was also noted on record that I was confined at Napa on an LPS Conservatorship when the crime was charged and did not have a criminal or a violent record before then.

The prosecution witness testified to serious injury but I have information that he only sustained minor injury and there was no substantial evidence of serious injury offered at trial, and the trial court did not question the validity of the serious injury allegation or give me the opportunity to refute this allegation.

**Claim Two:**

I was denied my right to appeal.

**b. Supporting Facts:**

My mother mailed a timely notice of appeal and request for certificate of probable cause to the Napa County Superior Court, but the court did not respond or process the appeal, so my mother mailed another notice. (See certified mail receipts.) Finally, the Superior Court forwarded the notice of appeal to the California First District Court of Appeal, that Court filed the notice (A119266) and appointed counsel for appeal; but counsel procrastinated and my mother inquired. Appellate counsel then telephoned me and said appealing is a waste of time and my prison sentence will be completed before the appeal is heard, although she later denied this. Appellate counsel refused to file an opening brief, a *Wende Brief*, or a *Ben C. Brief* and the appeal was denied. Even so, I still had to do a parole term and this unlawful felony conviction is on my record. Accordingly, my mother assisted me as "next friend" (as she is doing now) under *Whitmore v. Arkansas*, 495 U.S. 149, 163-64, 110 S.Ct. 1717, 1727-28 (1990), to petition the First District Court of Appeal for my right to appeal, but the petition was denied without PET. FOR WRIT OF HAB. CORPUS

7

comment, even though "there is strong public policy in favor of hearing appeals on their merits and not depriving a party of his right to appeal ... and appellate counsel has a duty as a competent advocate to argue all issues that are arguable."

This violates my right to due process and the equal protection of the laws under both the federal and state constitutions and laws, and under like provisions of the California Constitution and laws. This also violates my right to be free from retaliation and my right to due process pursuant to the "First Amendment and Due Process" stipulation on page 75(J) of the Consent Judgment (CV 06-2667 GPS) the U.S. Justice Department made with Napa State Hospital on May 2, 2006, that states: "[e]ach State Hospital unconditionally permits individuals to exercise their constitutional rights of free speech, including the right to petition the government for redress of grievances without state monitoring and provides them due process."

**Claim Three:**

Defense counsel and the trial court acknowledged on the record at sentencing that the doctors who examined me opined that "it does not appear that I had the mental facilities to comply with probation terms," and noted that I have brain damage and I should not be sentenced to prison or perhaps even tried.

**c. Supporting Facts:**

It seems obvious that the mental "health" department was using the Napa Superior Court and the district attorney to retaliate against me for my mother's activities by pressing charges and leaving no alternative to the parties involved but to prosecute me and if I am given the opportunity and given due process and the equal protection of the laws I can demonstrate this.

This violates my right to due process and the equal protection of the laws under both the federal and state constitutions and laws, and under like provisions of the California Constitution and laws. This also violates my right to be free from retaliation and my right to due process pursuant to the "First Amendment and Due Process" stipulation on page 75(J) of the Consent Judgment (CV 06-2667 GPS) the U.S. Justice Department made with Napa State Hospital on May 2, 2006, that states: "[e]ach State Hospital unconditionally permits individuals to exercise their constitutional rights of free speech, including the right to petition the government for redress of grievances without state monitoring and provides them due process."

PET. FOR WRIT OF HAB. CORPUS

8

**Claim Four:**

Ineffective and incompetent assistance of appointed appellate counsel.

**c. Supporting Facts:**

When appellate counsel is appointed to an appeal he or she is has the duty to carefully and diligently investigate all defenses of fact and of law that may be available to his or her client; and should promptly advise him or her of his or her rights and take all action necessary to preserve them. If counsel's failure to perform these obligations results in the withdrawal of a potentially meritorious defense, defendant has not had the assistance to which he is entitled and failure of counsel to do any of the above, including failing to file a Wende or Ben C. brief, constitutes ineffective and incompetent counsel. Appellate counsel did not file a Wende or Ben C. brief in this case and simply abandoned the appeal, and as a result I was denied my right to appeal and my right to counsel and effective and meaningful counsel on appeal.

This violates my right to due process and the equal protection of the laws under both the federal and state constitutions and laws, and under like provisions of the California Constitution and laws. This also violates my right to be free from retaliation and my right to due process pursuant to the "First Amendment and Due Process" stipulation on page 75(J) of the Consent Judgment (CV 06-2667 GPS) the U.S. Justice Department made with Napa State Hospital on May 2, 2006, that states: "[e]ach State Hospital unconditionally permits individuals to exercise their constitutional rights of free speech, including the right to petition the government for redress of grievances without state monitoring and provides them due process."

If any of these grounds was not previously presented to any other court, state briefly which grounds were not presented and why: All of the grounds stated above were presented to the California First District Court of Appeals, and then to the California Supreme Court.

List, by name and citation only, any cases that you think are close factually to yours so that they are an example of the error you believe occurred in your case. Do not discuss the holding or reasoning of these cases:

PET. FOR WRIT OF HAB. CORPUS

1  **Authorities**

2  **Claim One: Discriminatory, Retaliatory, Selective, and Vindictive Prosecution:**

3  *Murgia v. Municipal Court* (1975) 15 Cal.3d 286, 289; *Baluyut v. Superior Court* (1995)

4  40 Cal.App.4th 1736, 1740;*Oyler v. Boles* (1962) 368 U.S. 448, 456 [7 L.Ed.2d 446, 453, 82 S.Ct. 501.

5  **Claim Two: Right to Appeal.**

6  *People v. Thomas* (1992) 2 Cal.4th 489, 539; *People v. Wende* (1979) 25 Cal.3d 436;

7  *Conservatorship of Ben C.* (2007) 40 Cal.4th 529; *Penal Code*, §§ 1237 and 1237.5.

8  **Claim Three: Incompetent**

9  *Pate v. Robinson,* 383 U. S. 375 (1966); *Dusky v. United States,* 362 U.S. 402

10  (1960)

   **Claim Four: Ineffective Assistance of Appellate Counsel.**

11  *In re Spears* (1984) 157 Cal.App.3d 1203, 1210; *People v. Rhoden* (1972) 6 Cal.3d 519;

12  *People v. Barton* (1978) 21 Cal.3d 513, 514; *People v. Gaston* (1978) 20 Cal.3d 476, 477;

13  *People v. Silva* (1978) 20 Cal.3d 489, 490; *People v. Valenzuela* (1985) 175 Cal.App.3d

14  381, 382; *Strickland v. Washington* (1984) 466 U.S. 668), and *People v. Pope* (1979)

15  23 Cal.3d 412, 425.

   **Due Process:**

16  *Ex parte Virginia* (1880) 100 U.S. 339, 347 [25 L.Ed. 676, 679; *O'Shea v. Littleton*

17  (1974) 414 U.S. 488, 502-503 [38 L.Ed.2d 674, 687-688, 94 S.Ct. 669.

18  Do you have an attorney for this petition?                          Yes          No √

19  If you do, give the name and address of your attorney: N/A

20  WHEREFORE, petitioner prays that the Court grant petitioner relief to which he may be

21  entitled in this proceeding. I verify under penalty of perjury that the foregoing is true and correct

22  to the best of my information, knowledge, and belief.

23  Executed on Date:                                    Signature of Petitioner

24  X  4/11/08                                        X  _____
   PET. FOR WRIT OF HAB. CORPUS

25

10

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

CALIFORNIA SUPREME
COURT

350 McALLISTER ST.

SAN FRANCISCO,
CA 94102

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____  ☐ Agent
                        ☐ Addressee

B. Received by ( Printed Name )   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:       ☐ No

3. Service Type
   ☐ Certified Mail   ☐ Express Mail
   ☐ Registered       ☐ Return Receipt for Merchandise
   ☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from ser_____    7006 0100 0005 4146 9993

PS Form 3811, February 2004      Domestic Return Receipt      102595-02-M-1540

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ 41 |
| Certified Fee | 2.65 |
| Return Receipt Fee (Endorsement Required) | 2.15 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 5.2⁴ |

Postmark Here  FEB 21 2008

Sent To  CALIFORNIA SUPREME COURT
Street, Apt. No.; or PO Box No.  350 McALLISTER ST.
City, State, ZIP+4  SAN FRANCISCO, CA 94102

PS Form 3800, June 2002      See Reverse for Instructions

7006 0100 0005 4146 9993

S15775O

January 30, 2008

RECEIVED

FEB 2 5 2008

CLERK SUPREME COURT

Ann P. Williams
2251 Nobili Ave.
Santa Clara, CA 95051
(408) 246-2722

California Supreme Court
350 McAllister Street
San Francisco, California 94102      *Mail Receipt# - 7007 0710 0003 6516 0069*
                                     *Certified*                    *(see attached)*
Re: Curtis Kimber-- *CDC or  ID# NA202929-6*
                    *CR 114643 Superior Court #*

TO THE COURT:

  I helped my impaired son file a petition for writ of habeas corpus in this Court months ago because he was wrongfully convicted of a felony offense while he was committed to a state mental hospital. I helped him file a notice of appeal in the superior court, but appointed appellate counsel refused to file an opening brief or a Wende brief, and the First District Court of appeal would not rectify this when they were petitioned to do so.

  It appears that my son has been a casualty of the difficulty of defining mental illness, trial and appellate fact-finders' deference to psychiatric testimony, and the paternalistic attitudes of appointed trial and appellate counsel. (See Conservatorship of Roulet (1979) 23 Cal.3d 219, 234-235.)

  I am writing to ask this California Supreme Court to please examine the habeas petition as soon as possible.

Ann P. Williams

*Ann P. Williams*

**Supreme Court of California**

S157750

**Docket Listing**

| | |
|---|---|
| **Case Number:** | S157750 |
| **Current Status:** | closed |
| **Case Title:** | KIMBER (CURTIS) ON H.C. |
| **Start Date:** | 10/31/2007 |
| **Case Category:** | Original Proceeding - Habeas |

---

**Court of Appeals Case Information**

---

**Lower Court Case Information**

---

| **Party Information** | **Attorneys** |
|---|---|
| CURTIS KIMBER | [None] |
| Petitioner | |
| C/O Ann P. Williams | |
| 2251 Nobili Avenue | |
| Santa Clara, CA 95051 | |

---

**Docket Events**

| Date | Event |
|---|---|
| 10/31/2007 | Petition for writ of habeas corpus filed by Curtis Kimber, petitioner in Pro Per. |
| 11/14/2007 | Petition for writ of habeas corpus denied (See In re Swain (1949) 34 Cal.2d 300, 304; People v. Duvall (1995) 9 Cal.4th 464, 474.) |

12/21/2007          09:09          7072535411                    NSH ED

NAPA STATE HOSPITAL
COST OF CARE PER FISCAL YEAR FOR EACH INDIVIDUAL

| Fiscal Year | Allocation Amount | Population | Cost per Individual |
|-------------|-------------------|------------|---------------------|
| 2006/07 | $211,810,383 | 1, 175 | $180,264.00 |
| 2005/06 | $191,399,492 | 1, 157 | $165,427.00 |
| 2004/05 | $176,684,826 | 1, 157 | $152,709.00 |
| 2003/04 | $162,793,625 | 1, 044 | $155,933.00 |
| 2002/03 | $150,817,564 | 1, 064 | $141,746.00 |
| 2001/02 | $151,126,365 | 1, 092 | $138,394.00 |

Cost Per Meal

| Food cost FY 06/07 | $2,298,544.02 |
|--------------------|---------------|
| Food cost per day | $6,297.38 |
| Food cost per patient per day | $5.24 |
| Food cost per meal per patient per day | $1.74 |



Public
Information

MC-275

Name    Curtis Kimber

Address    C/O Ann P. Williams

2251 Nobili Ave.

Santa Clara, California 95051

CDC or ID Number    NA 202929-6

_____ California Supreme Court _____

_____
*(Court)*

In re CURTIS KIMBER,
Petitioner

vs.

ED FOULK, Executive Director,
Respondent

**PETITION FOR WRIT OF HABEAS CORPUS**

No. _____
*(To be supplied by the Clerk of the Court)*

## INSTRUCTIONS — READ CAREFULLY

- **If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.**

- **If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.**

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies.

- If you are filing this petition in the California Supreme Court, file the original and thirteen copies.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rules 56.5 and 201(h)(1) of the California Rules of Court [as amended effective January 1, 1999]. Subsequent amendments to Rule 44(b) may change the number of copies to be furnished the Supreme Court and Court of Appeal.

Page one of six

**PETITION FOR WRIT OF HABEAS CORPUS**

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rules 56.5, 201(h)

American LegalNet, Inc.
www.USCourtForms.com

petition concerns:

[✔] A conviction                    [✔] Parole

[✔] A sentence                      [ ] Credits

[ ] Jail or prison conditions       [ ] Prison discipline

[✔] Other (specify): I was not allowed to appeal, although I mailed timely notice of appeal to trial court.

1. Your name: Curtis Kimber

2. Where are you incarcerated? Napa State (Mental) Hospital, Napa, California 94558

3. Why are you in custody?    [✔] Criminal Conviction    [✔] Civil Commitment

*Answer subdivisions a. through i. to the best of your ability.*

a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").
Current commitment is because it was found not guilty by reason of insanity, and I was committed to a mental institution. I was subsequently subjected to retaliatory prosecution, unlawfully convicted, and my appellate rights were ignored and then denied by appellate counsel and First District Court of appeal.

b. Penal or other code sections: Penal Code, § 1026 (not guilty-insanity) and Penal Code, § 242 (felony battery).

c. Name and location of sentencing or committing court:
Convicted & sentenced by Napa County Superior Court, and I mailed timely notice of appeal but the Napa Court did not process notice. Petitioned First District California Court of Appeal for appellate rights but First District denied petition.

d. Case number: CR 114643

e. Date convicted or committed: On or around February 22, 2007.

f. Date sentenced: On or around February 22, 2007.

g. Length of sentence: Length of prison & parole term not clear & no complete information from trial counsel

h. When do you expect to be released? Do not expect release unless reviewing court acts and issues release order.

i. Were you represented by counsel in the trial court?    [✔] Yes.    [ ] No. If yes, state the attorney's name and address
[Mis] represented by Napa County County Deputy Public Defender Mr. Richard Gates.

4. What was the LAST plea you entered? *(check one)*

[ ] Not guilty    [ ] Guilty    [ ] Nolo Contendere    [ ] Other:

5. If you pleaded not guilty, what kind of trial did you have?

[ ] Jury    [ ] Judge without a jury    [ ] Submitted on transcript    [ ] Awaiting trial

**DS FOR RELIEF**

**ound 1:** State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

I was charged & convicted by a retaliatory, selective, vindictive, & discriminatory prosecution with the use of false evidence & testimony because my mother provided information & evidence to the U.S. Justice Department for their Civil Rights of Institutionalized Person's Act Investigation, my mother testified at the September 20, 2005, State Senator Chesbro Hearing about the abuses, deaths, dishonesty, and other malfeasance at NSH, and I appeared in the documentary movie titled "Psychiatry: An Industry of Death," published by the Citizens Commission on Human Rights (CCHR). I filed timely notice of appeal but trial court did not process notice, and First District Appeals Court denied my petition for appellate rights.

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. *(See In re Swain (1949) 34 Cal.2d 300, 304.)* A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where)*. *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

I was serving Penal Code, § 1026 not guilty by insanity commitment and I was charged with battery with GBI. I was being abused and over- drugged with mind-altering psychiatric drugs or I would not have reacted the way I did, and there are many scientific studies conducted by reputable scientists that verify psychiatric drugs cause violence. Violence on patients and staff is a common occurrence at NSH and there are several patients at the facility that have committed many, many, acts of violence and commit violence on other patients almost daily; but they were not charged with crimes and not seriously disciplined, and some were not disciplined at all, and I have names and statistics verifying my claims. The prosecution witness testified to serious injury but [I believe] he did not sustain serious injury and there was no substantial evidence of serious injury offered at trial, and trial court did not question validity of this or give me the opportunity to refute this. My mother mailed timely notice of appeal, but the trial court did not respond or process the appeal, so my mother mailed another notice. (See certified mail receipts.) Finally, the First District Court of Appeal appointed counsel, but counsel procrastinated and when my mother inquired appeals counsel telephoned me and told me that appealing is a waste of time because my prison sentence will be completed by the time the appeal is heard, although she later denied this. Still the literature reveals that some appointed counsel, regardless of how experienced they may be, tend to play a paternalistic rather than an advocacy role. And this unlawful conviction is on my record as a violent felony conviction and I still have a parole term. Accordingly, my mother assisted me as "next friend" (as she does now) to petition the First District Court of Appeal for my right to appeal, but the petition was denied without comment, even though "there is strong public policy in favor of hearing appeals on their merits and not depriving a party of his right to appeal because of technical noncompliance, where he is attempting to perfect his appeal in good faith," and appellate counsel has a duty as a competent advocate to "argue all issues that are arguable."

b. Supporting cases, rules, or other authority (optional):

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary attach an extra page.)*

NEXT FRIEND SEE: Whitmore v. Arkansas, 495 U.S. 149, 163-64, 110 S.Ct. 1717, 1727-28, 109 L. Ed.2d 135 (1990). APPEAL RIGHTS SEE: Jarkieh v Badagliacco (1945) 68 CA2d 426, 15; Knodel v Knodel (1975) 14 C3d 752. Neither the federal nor state Constitution countenances the singling out of an invidiously selected class for special prosecutorial treatment, whether the class consists of black or white, Jew or Catholic, Irishman or Japanese, United Farm Worker or Teamster. If an individual can show that he would not have been prosecuted except for such invidious discrimination against him... the prosecution must collapse on the sands of prejudice. (Murgia v. Municipal Court (1975) 15 Cal.3d 286, 289.)

**Ground 2** or **Ground** _____ (if applicable):

Ineffective assistance of trial counsel, ineffective assistance of appellate counsel, and denial of access to the courts. "A criminal defense attorney has a duty to carefully and diligently investigate all defenses of fact and of law that may be available to his client; and should promptly advise him of his rights and take all action necessary to preserve them. If counsel's failure to perform these obligations results in the withdrawal of a potentially meritorious defense, defendant has not had the assistance to which he is entitled and failure of counsel to do any of the above, including failing to obtain expert witnesses can constitute ineffective or incompetent assistance of counsel.

a. **Supporting facts:**

My mother telephoned trial counsel several times before trial and explained I am the victim of discriminatory and retaliatory prosecution, the victim was inflating the incident and was not seriously injured despite his claims, I was abused by the victim, and my mother explained the mitigating circumstance that I would not have reacted to the victim the way I did but for being under the involuntary influence of mind-altering psychiatric drugs, and my mother mailed trial counsel scientific studies and information about psychiatric drugs causing violence. Nevertheless, trial counsel ignored all these things and would not advocate for me or defend me at trial and did not raise any defense at trial. The denial of access to the courts I experienced by being denied my right to appeal is not in the same context as Lewis v. Casey, notwithstanding, Lewis v. Casey explained that to establish a violation of your right to access to the courts, you must show actual injury from the alleged shortcomings in the prison law library or legal assistance program. By analogy and in principle, "anyone convicted of a crime no matter what penalty is given has appellate rights," and when appellate counsel and or the Court of Appeals denies that right that establishes a violation of your right to access to the courts and that also causes actual injury.

NOTE: The Citizens Commission on Human Rights (CCHR) International was established in 1969 by the Church of Scientology to investigate and expose psychiatric violations of human rights, and to clean up the field of mental healing. Today, it has more than 250 chapters in over 31 countries. Its board of advisors, called Commissioners, includes doctors, lawyers, educators, artists, business professionals, and civil and human rights representatives. CCHR has inspired and caused many hundreds of reforms by testifying before legislative hearings and conducting public hearings into psychiatric abuse, as well as working with media, law enforcement and public officials the world over. (See the Citizens Commission on Human Rights, International (CCHR)

6616 Sunset Blvd.

Los Angeles, CA, USA 90028

Telephone: (323) 467-4242 • (800) 869-2247 • Fax: (323) 467-3720

www.cchr.org • e-mail: humanrights@cchr.org

b. **Supporting cases, rules, or other authority:**

INEFFECTIVE TRIAL COUNSEL: People v. Pope (1979) 23 Cal.3d 412, 424-425, 2 A.L.R.4th 1; Strickland v. Washington (1984) 466 U.S. 668; People v. Frierson (1979) 25 Cal.3d 142, 143; Evid. Code, § 1017; People v. Zapien (1993) 4 Cal.4th 929, 980 [17 Cal.Rptr.2d 122, 846 P.2d 704. INEFFECTIVE APPELLATE COUNSEL: People v. Wader (1993) 5 Cal.4th 610, 658; In re Spears (1984) 157 Cal. App.3d 1203, 1210; People v. Rhoden (1972) 6 Cal.3d 519, 524; Conservatorship of Roulet (1979) 23 Cal.3d 219, 234-236. ACCESS TO COURTS: Lewis v. Casey, 518 U.S. 343, Pilgrim v. Littlefield, 92 F.3d 413, 416 (6th Cir. 1996)."Anyone convicted of a crime no matter what penalty is given has appellate rights. (People v. Thomas (1992) 2 Cal.4th 489, 539.)

Did you appeal from the conviction, sentence, or commitment?  ☑ Yes.  ☐ No.  If yes, give the following information.

a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):
I tried to appeal but I was not allowed to appeal.

b. Result: Denied.                                            c. Date of decision: Filed October 4, 2007

d. Case number or citation of opinion, if known:  A119266.

e. Issues raised: (1) Prison delivery rule, but apparently I did not describe the entire problem well enough.

(2) _____

(3) _____

f. Were you represented by counsel on appeal?  ☑ Yes.  ☐ No.  If yes, state the attorney's name and address, if known.

Appellate counsel tried to dissuade me from appealing without good cause and abandoned my appeal.

9. Did you seek review in the California Supreme Court?  ☑ Yes.  ☐ No.  If yes, give the following information.

a. Result: By this petition I seek Calif. Supreme Court review.   b. Date of decision: _____

c. Case number or citation of opinion, if known: _____

d. Issues raised: (1) _____

(2) _____

(3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

Appointed appellate counsel tried to dissuade me from appealing without good cause and then abandoned
my appeal.

_____

11. Administrative Review:

a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

There are no administrative remedies to these judicial matters, because this petition concerns a retaliatory
selective, vindictive, and discriminatory prosecution with the use of false evidence and testimony,
ineffective assistance of trial and appellate counsel, denial of access to the courts, denial of the right to
appeal, and unconstitutional JUDICIAL action taken

Note: I have attached all the relevant and pertinent Certified Mail Receipts, and documentation.

_____
_____
_____
_____
_____
_____

b. Did you seek the highest level of administrative review available?  ☐ Yes.  ☐ No.
Attach documents that show you have exhausted your administrative remedies.

er than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or **issue** in any court?  ☐ Yes. If yes, continue with number 13.  ☑ No. If no, skip to number 15.

13. a.  (1) Name of court: I filed petitions stated above in attempt to obtain my appellate rights, but no success.

(2) Nature of proceeding (for example, "habeas corpus petition"): _____

(3) Issues raised:  (a) _____

(b) _____

(4) Result *(Attach order or explain why unavailable)*: _____

(5) Date of decision: _____

b.  (1) Name of court: _____

(2) Nature of proceeding: _____

(3) Issues raised:  (a) _____

(4) Result *(Attach order or explain why unavailable)*: _____

(5) Date of decision: _____

c.  *For additional prior petitions, applications, or motions, provide the same information on a separate page.*

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result.

_____
_____
_____

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.)

There has not been any delay. _____
_____
_____

16. Are you presently represented by counsel?  ☐ Yes.  ☑ No. If yes, state the attorney's name and address, if known:
But my mother is helping me file this as "next friend," because I am in a mental hospital, I have problems, I am on psychiatric drugs, and I do not have the ability or resources to file this myself _____

17. Do you have any petition, appeal, or other matter pending in any court?  ☐ Yes.  ☑ No. If yes, explain:
_____
_____

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:
This matter was brought to the First District Court of Appeal and relief denied so the California Supreme Court is the proper court for this petition. _____

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: _____                ▶ _____
                                           (SIGNATURE OF PETITIONER)

er than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or **issue** in any court?    ☐ Yes. If yes, continue with number 13.    ☑ No. If no, skip to number 15.

13. a.  (1) Name of court: I filed petitions stated above in attempt to obtain my appellate rights, but no success.

   (2) Nature of proceeding (for example, "habeas corpus petition"): _____

   (3) Issues raised:  (a) _____

      (b) _____

   (4) Result (Attach order or explain why unavailable): _____

   (5) Date of decision: _____

   b.  (1) Name of court: _____

   (2) Nature of proceeding: _____

   (3) Issues raised:  (a) _____

      (b) _____

   (4) Result (Attach order or explain why unavailable): _____

   (5) Date of decision: _____

   c.  For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

_____
_____
_____

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)

   There has not been any delay. _____
_____

16. Are you presently represented by counsel?  ☐ Yes.  ☑ No. If yes, state the attorney's name and address, if known:
   But my mother is helping me file this as "next friend,"because I am in a mental hospital, I have problems, I
   am on psychiatric drugs, and I do not have the ability or resources to file this myself.

17. Do you have any petition, appeal, or other matter pending in any court?    ☐ Yes.  ☑ No. If yes, explain.

_____
_____

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:
   This matter was brought to the First District Court of Appeal and relief denied so the California Supreme
   Court is the proper court for this petition.

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date: X 10/25/07                    ▶ X _Curtis M. Kim_
                                        (SIGNATURE OF PETITIONER)

signed copy returned
to me

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

CALIFORNIA SUPREME
COURT

350 MCALLISTER ST.

SAN FRANCISCO,

CA 94102

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X ☐ Agent ☐ Addressee

B. Received by ( *Printed Name* )   C. Date of Delivery
10/31/07

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
   ☑ Certified Mail    ☐ Express Mail
   ☐ Registered       ☐ Return Receipt for Merchandise
   ☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)

7007 0710 0003 6516 0069

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com.

OFFICIAL USE

| | |
|---|---|
| Postage | $ .58 |
| Certified Fee | 2-65 |
| Return Receipt Fee (Endorsement Required) | 2.15 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 5.38 |

Postmark Here — SANTA CLARA CA — OCT 2007

7007 0710 0003 6516 0069

Sent To
CALIFORNIA SUPREME COURT
Street, Apt. No.; or PO Box No. 350 MCALLISTER ST.
City, State, ZIP+4
SAN FRANCISCO, CA 94102

PS Form 3800, August 2006    See Reverse for Instructions

Case 3:08-cv-02062-JSW    Document 1-2    Filed 04/21/2008    Page 1 of 1    COPY

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

**FILED**

OCT – 4 2007

In re CURTIS KIMBER,

on Habeas Corpus.

A119266

Court of Appeal - First App. Dist
DIANA HERBERT

By _____ DEPUTY

(Napa County
Super. Ct. No. CR 114643)

BY THE COURT:

The "Petition to Enforce Disabled Person's Right of Appeal," which we deem to be a petition for writ of habeas corpus, is denied.

(Ruvolo, P.J., and Reardon, J., joined in the decision.)

**RUVOLO, P.J.**

Date: _____    _____ P.J.

A119266

Curtis Kimber
c/o Ann P. Williams
2251 Nobili Ave.
Santa Clara, CA 95051

## NOTICE

*Please include both the appellate case number and the division number on any written communication or filing submitted to this court.*

**Our website address is
http://appellatecases.courtinfo.ca.gov**

pet

adda

1  Curtis Kimber
   c/o Ann P. Williams
2  2251 Nobili Ave.
   Santa Clara, California 95051
3  In pro se

4

5

6

7

8              **IN THE CALIFORNIA COURT OF APPEAL**

9                  **FIRST APPELLATE DISTRICT**

10

   | THE PEOPLE OF THE STATE | Appeals Court No. _____ |
11 | OF CALIFORNIA, | **Court Clerk Please Supply** |

12 |     Plaintiff, | Napa Co. Superior Court No. CR 114643 |

13 |     v. | **APPLICATION FOR RELIEF FROM** |
14 |   | **FORMAT REQUIREMENTS OF** |
   | CURTIS KIMBER, | **CALIFORNIA RULES OF COURT,.** |
15 |   | **RULE 201, AND WAIVER OF FEES** |
   |     Defendant. | **FOR GOOD CAUSE SHOWN (CRC,** |
16 |   | **RULE 201(j); Roberts v. Superior Court** |
17 |   | **(1968) 264 Cal.App.2d 235, at 239.)** |

18     Defendant Curtis Kimber, with assistance from his "next friend" mother,  hereby

19 respectfully makes this request for relief from the format requirements of California Rules

20 of Court, Rule 201, based upon good cause:

21 1.     I am a mental impaired individual, which impairment was induced to a degree by

   psychiatric drugs, confined in a mental institution and I am not skilled in the complicated

22 and intricate procedures of the law, and I request the Court to hold the attached request to

23 appeal to "less stringent standards than the formal pleadings drafted by lawyers" (Haines

24 v. Kerner, 404 U.S. 519 (1972); Baslistreri v. Pacifica Police Dept., 901 F. 2d 696 (9th

25 Cir. 1990), "because the pro se litigant is far more prone to making errors in pleading than

   the person who benefits from the representation of counsel (Noll v. Carlson, 809 F.2d

                                              1

1446, 1448, 7 Fed.R.Serv.3d 253), and the Supreme Court has instructed the federal [and State] courts to liberally construe the 'inartful pleading[s]' of pro se litigants." (Eldridge v. Block, 832 F.2d 1132, 1137 (9th Cir.1987) (quoting Boag v. MacDougall, 454 U.S. 364, 365, 102 S.Ct. 700, 701, 70 L.Ed.2d 551 (1982).

2.      I am virtually indigent and I do not have the funds to hire a lawyer or pay for expensive legal supplies and fees; but "the fees required by code section or statute for the carrying on of litigation in our courts generally may be waived when a litigant sues or defends in forma pauperis is the applicable rule in California." (Roberts v. Superior Court (1968) 264 Cal.App.2d 235, at 239, citing Majors v. Superior Court, 181 Cal. 270 [184 P. 18, 6 A.L.R. 1274]; Hammond v. Justice's Court, 37 Cal.App. 506 [174 P. 69]; Willis v. Superior; 20 Am.Jur.2d, Costs, § 47, pp. 37-38.) (See also: re proof in forma pauperis, Adkins v. E. I. Du Pont de Nemours & Co., Inc., 335 U.S. 331, 338-339 [93 L.Ed. 43, 48-49, 69 S.Ct. 85, 11 A.L.R.2d 599].)

3.      I rely on my mother's assistance and she is a layperson at the law, although she does her best to assist me against the "Goliath" mental health system.

4.      Mental patients are supposed to receive "more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish" (Sharp vs. Weston, 233 F. 3d 1166, 1172 (9th Cir. 2000), quoting Youngberg v. Romeo (1982) 457 U.S. 307 at 322, 102 S.Ct. 2452; Cf. Estelle v. Gamble, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976); See also W&I Code § 6250). Nevertheless, there are not any lawyers that will represent me gratis or pro bono, although the Prison Law Office at San Quentin comes to the aid and represents state prisoners when their rights are violated or ignored.

5.      Defendant is unsure of the precise or best procedure or vehicle to bring an action to preserve his right to appeal, but "[r]ights of prisoners can be enforced through actions for declaratory and injunctive relief brought pursuant to Code of Civil Procedure section 1060." (See, e.g., *DeLancie v. Superior Court* (1982) 31 Cal.3d 865 [183 Cal.Rptr. 866, 647 P.2d 142]; *In re Head* (1986) 42 Cal.3d 223, fn. 7).

6.      This case poses an issue of broad public interest likely to recur and when a case poses an issue of broad public interest likely to recur, an appellate court may exercise its

2

1  "inherent discretion" to resolve the issues. (*In re William M.* (1970) 3 Cal.3d 16, 23-25

2  [89 Cal.Rptr. 33, 473 P.2d 737], and cases cited; In re Lee (1978) 78 Cal.App.3d 753,

3  144 Cal.Rptr. 528; *H-CHH Associates v. Citizens for Representative Government* (1987)

4  193 Cal.App.3d 1193, 1220; *In re Garcia,* (1998) 67 Cal.App. 4th. 841 [79 CR.2d. 357];

   *In re Angel M.* (1998) 58 Cal.App. 4th. 1498 [68 CR.2d 825.) (See also *Greene v. Zank*

5  (1984) 158 Cal.App.3d 497, 515, fn. 6; *Bach v. County of Butte* (1983) 147 Cal.App.3d

6  554, 564.)

7  7.      The United States Supreme Court has suggested the importance of determining

8  important issues, which would not otherwise be decided, and this case typifies cases where

   persons at low levels (mentally ill) are perpetually deprived of constitutional rights and

9  should not be left utterly remediless and defenseless against repetitions of unconstitutional

10 conduct. (*See Sibron v. New York* (1968) 392 U.S. 40, 52-53 [20 L.Ed.2d 917, 928-929,

11 88 S.Ct. 1889].)

12 8.      In the case of *In re Head*, the California Supreme Court held "the nature of the

13 relief sought, not the label or procedural device by which the action is brought, is

   determinative ... noting that the claim was of such a nature that it might have been

14 presented in a purely civil proceeding—by petition for writ of mandate or action for

15 declaratory relief—and the fact the more expeditious, simplified and less expensive-

16 procedure of habeas corpus was utilized to vindicate the right should not affect the

17 availability of the fee award." (In re Head (1986) 42 Cal.3d 223, 721 P.2d 65; 228 Cal.

18 Rptr. 184.)

           Therefore, defendant respectfully requests the Court to grant relief from the format

19 requirements of California Rules of Court, Rule 201, based upon good cause.

20         I declare under penalty of perjury that the foregoing is true and correct to the best

21 of my knowledge, information, memory, and belief.

22 Respectfully submitted,                                    Dated: 9/19/07

23 Curtis Kimber

24 *Curtis M. Kimber*

25 *copy sent to Napa Co Superior Court*

                                        3

Curtis Kimber
c/o Ann P. Williams
2251 Nobili Ave.
Santa Clara, California 95051
In pro se

# IN THE CALIFORNIA COURT OF APPEAL.

## FIRST APPELLATE DISTRICT

| THE PEOPLE OF THE STATE OF CALIFORNIA, | Appeals Court No. _____ |
|---|---|
| | **Court Clerk Please Supply** |
| Plaintiff, | Napa Co. Superior Court No. CR 114643 |
| v. | PETITION TO ENFORCE DISABLED PERSON'S RIGHT OF APPEAL. (See Cal. Rules of Court, |
| CURTIS KIMBER, | Rule 45(e), In re Jordan (1992) 4 Cal.4th 116, 13 |
| Defendant. | Cal.Rptr.2d 878; 840 P.2d 983, Cochran v. Kansas (1942) 316 U.S. 255 [86 L.Ed. 1453, 62 S.Ct. 1068].) |

**I**

## Introduction

This case concerns a hospitalized and mentally impaired defendant being denied his right to appeal a Superior Court conviction and subsequent judgment imposing a state prison sentence and a felony conviction record, despite the efforts of his "next friend" mother assisting defendant prepare and submit a timely notice of appeal and taking other steps to ensure her disabled and mentally impaired son does not lose his right to appeal an unconstitutional conviction and sentence. (See *Whitmore v. Arkansas*, 495 U.S. 149, 163-64, 110 S.Ct. 1717, 1727-28, 109 L.Ed.2d 135 (1990); *Amerson v. Iowa* (8th Cir. 1995) 59 F.3d 92) (Real party in interest cannot prosecute habeas petition, "next friend" is "truly dedicated" to best interests of person on whose behalf she litigates, and next freind has significant relationship with real party in interest) (See also *In re Dowell* (1935) 4 Cal.App.2d 688, 689 [41 P.2d 596]; Welfare & Institutions Code, §§ 5275, 5276, Penal Code, §§ 1473-1508, and Cal Rules of Court, Rules 50, 56.5, 60, 201(h), and 260 )

## II
### Statement of Facts

While serving a California Penal Code, section 1026, not guilty by reason of insanity commitment at Napa State (Mental) Hospital, Napa California. Defendant Curtis Kimber was charged with a felony violation of the California Penal Code and transferred from Napa State Hospital to the Napa County Jail. Defendant was subsequently tried and convicted in the Napa County Superior Court, and the Superior Court entered judgment and sentence on February 22, 2007.

Soon thereafter defendant was transferred to San Quentin State Prison to serve the sentence imposed by the Napa County Superior Court on February 22, 2007. His mother and "next friend," Ann P. Williams, mailed a [timely] notice of appeal to him at San Quentin Prison by certified mail with return receipt on March 28, 2007, to enable defendant to sign and return the notice to his mother to timely file with the Napa County Superior Court. This was done to challenge defendant's conviction and sentence, which allegedly is based on fabricated evidence and due to defendant's mental disability and prison conditions of confinement of the mentally ill, and because defendant was unable to submit a notice of appeal to the Superior Court on his own. (See attached Certified Mail Receipt re San Quentin Prison, with U.S. Postal Service Stamp March 28, 2007, with attached notice of appeal.)

However, defendant reported that he did not receive the notice of appeal his mother mailed to him at San Quentin and the "Green Card" (Certified Return Mail Receipt) was not returned to his mother. Accordingly, defendant's mother and "next friend" then mailed a notice of appeal and a cover letter to the Napa County Superior Court by certified mail with return receipt. (See attached certified mail return receipt re Napa County Superior Court, with cover letter stamped and signed by D. Craven on April 24, 2007.)

A few months passed and defendant reported to his mother that he spoke with an attorney with the First District Appellate Project named Tara Mulay, and defendant reported essentially that Tara Mulay advised him to abandon his appeal and told him essentially that his prison sentence will be completed by the time his appeal is heard and his appeal is therefore useless.

///

///

Defendant's mother wrote a letter to the Director or Supervising Attorney of the First District Appellate Project about this, inter alia, and Tara Mulay responded by denying defendant's allegations and stating essentially that defendant filed an untimely notice of appeal and does not have any appellate rights. (See attached certified mail return receipt re First District Appellate Project, signed on August 17, 2007, with illegible signature, copy of letter to Tara Mulay and response from Tara Mulay )

## III
## Contentions

**a.** Defendant's notice of appeal was timely field under both the "constructive filing rule" and the "prison-delivery rule," and any untimely receipt of defendant's notice was not the fault of defendant, and is due to negligence, inactivity, dereliction of duty of another, others, or some other cause not the fault of defendant, and defendant's appeal cannot be rendered useless by the passing of time, because the appeal involves, inter alia, obliterating a felony conviction record. This is all evidenced by the attached exhibits and the trial court record.

**b.** The facts recited above also show that "the fundamental right in issue here is that of reasonable access to the courts," and "[d]enial or undue restriction of this right is a denial of the due process of law guaranteed to state prison inmates by the Fourteenth Amendment."

**c.** Trial Counsel's failure to prepare and timely file a notice of appeal and/or to inform defendant of his right to appeal constitutes ineffective assistance of counsel

## IV
## Points & Authorities

The In re Jordan Court therefore held that the prisoner's delivery of his notice of appeal to prison authorities "constituted a constructive filing within the prescribed time limit. ..." (Id. 30 Cal 2d at pp. 367-368.) The California Supreme Court further held that any other conclusion would "run counter" to the case of Cochran v. Kansas (1942) 316 U.S. 255 [86 L.Ed. 1453, 62 S.Ct. 1068], which determined that prison officials who suppressed a prisoner's appeal documents, rendering it impossible for him to perfect an appeal, violated the equal protection clause of the Fourteenth Amendment to the United States Constitution by refusing 'privileges of appeal ... afforded to others ' (In re Jordan (1992) 4 Cal.4th 116, 123, citing People v. Slobodion, 30 Cal 2d at p 368 )

///

The In re Jordan Court noted that the "prison-delivery rule" eliminates uncertainties, and explained that the United States Supreme Court observed in Houston v. Lack (1988) 487 U.S. 266 [101 L.Ed.2d 245, 108 S.Ct. 2379], that "making filing turn on the date the pro se prisoner delivers the notice to prison authorities for mailing is a bright-line rule, not an uncertain one."  (Id. 487 U.S. at p. 275 [101 L.Ed.2d at p. 255].)

Similarly, the In re Jordan Court agreed with the Court of Appeal in Dailey (People v. Dailey (1959) 175 Cal.App.2d 101 [345 P.2d 558]) that affirming equality of access to our courts "is necessary and right" and "will greatly simplify" the processing of criminal appeals when the notice of appeal is not received by the county clerk within the filing period prescribed by rule 31(a). The Court explained that in view of the high volume of criminal appeals pursued in the California courts, and the burdensome task involved in attempting to assess the diligence of prisoners on a case-by-case basis, we believe the administrative benefits of adhering to such a bright-line rule will be considerable, and therefore held that a prisoner's notice of appeal is deemed to have been filed in the office of the appropriate county clerk on the date, within the filing period prescribed by rule 31(a), on which it was delivered to the prison authorities. If the notice of appeal is received by the county clerk following expiration of the 60-day filing period, the prisoner who seeks to pursue his or her appellate rights has the burden of establishing that the notice of appeal was delivered to prison authorities within the 60-day period  (See In re Jordan (1992) 4 Cal.4th 116, 130.)

It is settled law that to obtain relief from default, a defendant must make an affirmative showing of good cause (Cal. Rules of Court, rule 45(e), and demonstrate that the delay in presenting the notice of appeal to the clerk was attributable to negligence, inactivity, dereliction of duty of another or some other cause not the fault of defendant (See People v. Breckenridge (1992) 5 Cal.App.4th 1096, 1099-1100; People v. Earls (1992) 10 Cal.App.4th 184, 190.)

b. The facts as recited above show that "the fundamental right in issue here is that of reasonable access to the courts," and "[d]enial or undue restriction of this right is a denial of the due process of law guaranteed to state prison inmates by the Fourteenth Amendment."  (See In re Allison (1967) 66 Cal.2d 282, 288 - 289, citing Cochran v. Kansas (1942) 316 U.S. 255, 257-258 [86 L.Ed. 1453, 62 S.Ct. 1068], Ex parte Hull (1941) 312 U.S. 546, 549 [85 L.Ed. 1034, 61 S.Ct. 640];

4

De Witt v Pail (9th Cir. 1966) 366 F 2d 682, 685, Hatfield v Bailleaux (9th Cir 1961) 290 F.2d 632, 636).

The In re Allison Court explained that "[t]he primary function of the right is to insure full and timely judicial review, if desired by the prisoner, of his judgment of conviction; hence 'the state has no power to deny a person the right to file in any court a petition or other document which purports to seek some remedy or relief relating to the offense for which he was imprisoned.'" (See In re Robinson (1952) 112 Cal App 2d 626, 629 [246 P.2d 982]; accord, In re Chessman (1955) supra, 44 Cal.2d 1, 9, People v Howard (1958) 166 Cal.App.2d 638, 642-643 [334 P.2d 105]; In re Malone (1952) 112 Cal.App.2d 631 [246 P.2d 984].) The In re Allison Court also explained that a "secondary function has developed coincident with the expansion of the scope of relief available to a prisoner on habeas corpus; in this respect the right of access permits the prisoner to bring to the attention of the courts alleged violations of his post-conviction rights 'suffered as a direct result of incarceration, such as the infliction of cruel and unusual punishment in prison...'" (See In re Riddle (1962) supra, 57 Cal 2d 848; In re Jones (1962) 57 Cal.2d 860 [22 Cal Rptr 478, 372 P.2d 310], In re Cathey (1961) 55 Cal.2d 679, 694 [12 Cal.Rptr 762, 361 P.2d 426].)

c.     Trial Counsel's failure to prepare and timely file a notice of appeal and/or to inform defendant of his right to appeal constitutes ineffective assistance of counsel. In order to establish a violation of the right to effective assistance of counsel, a defendant must show that counsel's performance was inadequate when measured against the standard of a reasonably competent attorney, and that counsel's performance prejudiced defendant's case in such a manner that his representation "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. (People v. Sanchez (1995) 12 Cal.4th 1, 40, quoting Strickland v Washington (1984) 466 U.S. 668, 686 [80 L.Ed.2d 674, 692-693, 104 S.Ct. 2052

The defendant in the In re Pritchett case was entitled to habeas corpus relief in order to challenge a sentence enhancement, after his counsel failed to file a timely notice of appeal (In re Pritchett (1994) 26 Cal.App.4th 1754, 1755), and "[i]t is true that relief [from the late filing of a notice of appeal] is granted to a criminal defendant in a variety of situations, one of which is the justifiable reliance on the promise of counsel that a timely notice [of appeal] will be filed." In such a situation, the attorney's inaction can usually be

justly characterized as ineffective assistance... (In re Issac J. (1992) 4 Cal.App.4th 525
536.)

## V
## Conclusion

In summation, the evidence is unequivocal and clearly shows that defendant's
mother timely filed his notice of appeal, despite appellate counsel's assertions to the
contrary, and any untimely receipt of defendant's notice was not the fault of defendant,
and is due to negligence, inactivity, dereliction of duty of another, others, or some other
cause not the fault of defendant, as evidenced by the exhibits attached, and defendant's
appeal cannot be rendered useless by the passing of time as the appeal involves, inter alia
obliterating a felony conviction record.

## VI
## Request for Relief

Therefore, defendant respectfully requests the Court to grant the following, but
not limited to relief

1. Defendant requests the Court to appoint counsel and proceed with his appeal,

2. Defendant requests the Court to investigate the action taken by Attorney Tara Mulay
with regards to this appeal, and,

3. Defendant requests the Court to grant relief from any default, and grant any other
additional and further relief that is just, equitable, and proper.

I declare under penalty of perjury that the foregoing is true and correct to the best
of my knowledge, information, memory, and belief.

Respectfully submitted,                                    Dated: 3/19/07

Curtis Kimber



**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

NAPA COUNTY SUPERIOR
COURT
MAIN COURTHOUSE
(825 BROWN ST.)
NAPA, CA 94559-0880

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature
X ☐ Agent ☐ Addressee

B. Received by (Printed Name)
D. CRAVEA
C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Certified Mail  ☐ Express Mail
☐ Registered  ☐ Return Receipt for Merchandise
☐ Insured Mail  ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)* ☐ Yes

2. Article Number
*(Transfer from service label)*
7007 0710 0003 6536 0045

PS Form 3811, February 2004          Domestic Return Receipt          102595-02-M-1540

---

U.S. Postal Service
**CERTIFIED MAIL RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com

**OFFICIAL USE**

| | |
|---|---|
| Postage | $ .40 |
| Certified Fee | 2.65 |
| Return Receipt Fee (Endorsement Required) | 2.15 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $6.26 |

Sent To NAPA COUNTY SUPERIOR CT.
Street, Apt. No.; MAIN COURTHOUSE
or PO Box No. (825 BROWN ST.)
City, State, ZIP+4 NAPA, CA 94559-0880

PS Form 3800, August 2006          See Reverse for Instructions

7007 0710 0003 6536 0045



**U.S. Postal Service**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com₌

**O F F I C I A L   U S E**

| Postage | $ | 131 |
| Certified Fee | | 265 |
| Return Receipt Fee (Endorsement Required) | | 215 |
| Restricted Delivery Fee (Endorsement Required) | | |
| Total Postage & Fees | $ | 611 |

Sent To
*FIRST DISTRICT COURT OF APPEALS*
Street, Apt. No.; or PO Box No. *350 McALLISTER ST.*
City, State, ZIP+4 *SAN FRANCISCO, CA 94102*

PS Form 3800, August 2006    See Reverse for Instructions

7007  0710  0003  6516  0052

---

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

*FIRST DISTRICT COURT*
*OF APPEALS*
*350 McALLISTER ST.*
*SAN FRANCISCO,*
*CA 94102*

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
10 2 0

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

OCT 03 2007

3. Service Type
☐ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
(Transfer from serv.)    7007 0710 0003 6516 0052

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

# FIRST DISTRICT APPELLATE PROJECT

730 Harrison Street, Suite 201• San Francisco, California 94107 • (415) 495-3119 • Facsimile: (415) 495-0166

August 29, 2007

Ms. Ann P. Williams
2251 Nobili Ave.
Santa Clara, CA 95051

Dear Ms. Williams:

After our office received your letter dated August 15, 2007, our executive director requested that I respond to clarify this matter and to explain limitations regarding the help we can give your son.

The statements in your August 15, 2007, letter are incorrect. Your son Curtis called me collect twice, on August 7 and August 10, 2007, and I have never called him. When your son called me for the first time, I had had no previous communications from him. Since a late notice of appeal had been sent to the superior court, Curtis had no appeal pending. Accordingly, we discussed whether he wanted to appeal and the potential timelines and stages involved in a request to file a late notice of appeal followed by an appeal. During both of my telephone conversations with Curtis, I questioned whether his belief that he would be released on parole from Napa County State Hospital in April 2008 was correct. Rather than trying to dissuade Curtis from pursuing an appeal, I was trying to provide him information and obtain relevant information from him.

Our office's job when, as in Curtis's case, a late notice of appeal has been sent to the superior court is to see if a special motion can be filed requesting that the Court of Appeal allow a defendant to appeal. We have completed our investigation and determined that, unfortunately, there is nothing our office can do for your son at this time other than to send you and him the enclosed form so that Curtis may file his own petition for a writ of habeas corpus if he wishes to do so. After reviewing the documents you sent to the superior court, reviewing other documents regarding the case, speaking with Curtis, and speaking with his trial attorney, our office has reached this conclusion because it appears that the only identified issue sought to be raised relates to a claim of ineffective assistance of counsel in advising Curtis to admit to a probation violation. Such a claim should be raised by way of habeas corpus rather than on direct appeal since the claim involves facts outside of the court record.

If your son is still unhappy with his probation violation admission, or with his trial

Ms. Ann Williams
April 29, 2007
Page 2

counsel's representation, he may be able to challenge it by filing a Petition for Writ of
Habeas Corpus. The petition would have to explain to the court exactly what errors were
made in Curtis's case. If the court accepts the argument it will allow him to withdraw the
probation violation admission. Be aware that if there was a deal in which Curtis admitted
to violating probation in exchange for the district attorney dropping some allegations or
for a sentencing limitation, the sentencing limitation or agreement for dropped charges
would no longer be in effect if the probation violation admission were successfully
challenged by way of a habeas corpus petition.

I am sending you and Curtis a form Petition for a Writ of Habeas Corpus. If Curtis
decides to file a petition, you may fill out the form, but Curtis must sign it, and it must be
mailed to the clerk's office of the county in which Curtis was sentenced. You may also
hire a private attorney to file a petition for a writ of habeas corpus. If the Petition for
Writ of Habeas Corpus is denied by the superior court, then it can re-filed in the Court of
Appeal (there is no appeal from the denial of a writ of habeas corpus, the remedy if you
lose is to re-file it in the Court of Appeal and ask the Court of Appeal to decide the case).

This office cannot serve as Curtis's attorney in this matter. Curtis would be filing his
habeas corpus petition himself (in pro per) if he is not represented by a private attorney. I
wish both you and Curtis the best in the future. I regret that our office is unable to provide
your son with any further assistance.

Sincerely,

TARA MULAY
FDAP Staff Attorney

enc.

1 | Wednesday, August 15, 2007
Ann P. Williams
2 | 2251 Nobili Ave.
Santa Clara, CA 95051
3 |

4 | Director/Supervising Attorney
First District Appellate Project
5 | 730 Harrison Street, Suite 201
San Francisco, California 94102
6 |

7 | RE:    CR 114643
Staff Attorney Tara Mulay

8 | TO THE DIRECTOR/SUPERVISING ATTORNEY:

9 |

10 | To get right to the point, I am writing because I was advised that your Staff Attorney Tara Mulay telephoned my drugged and mentally impaired son, Curtis Kimber, and apparently tried to dissuade him from pursuing his appeal in CR 114643. Tara Mulay apparently told Curtis that he will be released by the time his appeal goes through and there is no use to pursue the appeal, and/or some other such nonsense like this.

11 |

12 |

13 | First, when a person is committed to the so-called Department of Mental Health, God only knows when that person will be released, because there is not any true or legitimate scientific basis or premise to the industries of psychiatry and psychology, and there certainly is not any cure to so-called mental illness. As Dr. Thomas Szasz, professor of psychiatry emeritus and Co-Founder of the Citizens Commission on Human Rights, International[1] observes, "There is no blood or other biological test to ascertain the presence or absence of a mental illness, as there is for most bodily diseases. If such a test were developed (for what, theretofore, had been considered a psychiatric illness), then the condition would cease to be a mental illness and would be classified, instead, as a symptom of a bodily disease." Bruce Levine, Ph.D., psychologist and author of *Commonsense Rebellion* concurs: "Remember that no biochemical, neurological, or genetic markers have been found for attention deficit disorder, oppositional defiant disorder, depression, schizophrenia, anxiety, compulsive alcohol and drug abuse, overeating, gambling, or any other so-called mental illness, disease, or disorder." (Bruce D. Levine, Ph.D., *Common Sense Rebellion: Debunking Psychiatry, Confronting Society* (Continuum, New York, 2001), p. 277.)

21 | In 1994, psychiatrist Norman Sartorius (president of the World Psychiatric Association

22 |

---

[1] The Citizens Commission on Human Rights (CCHR) International was established in 1969 by the Church of Scientology to investigate and expose psychiatric violations of human rights, and to clean up the field of mental healing. Today, it has more than 250 chapters in over 31 countries. Its board of advisors, called Commissioners, includes doctors, lawyers, educators, artists, business professionals, and civil and human rights representatives. CCHR has inspired and caused many hundreds of reforms by testifying before legislative hearings and conducting public hearings into psychiatric abuse, as well as working with media, law enforcement and public officials the world over.

(1996-1999) declared at a meeting of a congress of the Association of European Psychiatrists, "the time when psychiatrists considered that they could cure the mentally ill is gone. In the future the mentally ill have to learn to live with their illness." (Lars Boegeskov, "Mentally Ill Have to Have Help—Not to be Cured," *Politiken* 19 Sept. 1994.) The following year, after more than $6 billion (€4.9 billion) in taxpayer money had been poured into psychiatric research, psychiatrist Rex Cowdry (Director of the U.S. National Institute of Mental Health) agreed with the WPA Chief and stated "We do not know the causes [of mental illness]. We don't have the methods of 'curing' these illnesses yet."

I could go on and on with this and cite a myriad of legitimate professionals supporting the truth that psychiatry and psychology are malfeasant pseudo sciences; but for the sake of brevity one only needs to see the documentary movie titled "Psychiatry-An Industry of Death," published by CCHR.

Tara Mulay's assessment that Curtis should abandon his appeal ostensibly because he will be released by the time his appeal goes through would be ludicrous if it were not for the seriousness of this potentially catastrophic situation. It is our contention that Curtis was subjected to a fundamental miscarriage of justice and an unconstitutional conviction and newly discovered evidence supports this.

I have heard of an appellate attorney providing ineffective or incompetent assistance of appellate counsel and violating an appellant's right to Due Process and the Equal Protection of the Laws under the 14th Amendment to the United States Constitution (See People v. Barton (1978) 21 Cal.3d 513, 514.) (See also People v. Gaston (1978) 20 Cal.3d 476, 477; People v. Silva (1978) 20 Cal.3d 489, 490; People v. Valenzuela (1985) 175 Cal.App.3d 381, 382), and this is something along those lines but much worse.

I do not appreciate this and if necessary I will write to the appropriate forum under Whitmore v. Arkansas, 495 U.S. 149, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990), and explain this inappropriate conduct.

Sincerely,

Ann P. Williams

For further information:
CCHR International
6616 Sunset Blvd.
Los Angeles, CA, USA 90028
Telephone: (323) 467-4242 • (800) 869-2247 • Fax: (323) 467-3720
www.cchr.org • e-mail: humanrights@cchr.org

///

///

///

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____  ☐ Agent  ☐ Addressee

B. Received by ( Printed Name )   C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

1. Article Addressed to:

DIRECTOR/SUPERVISING ATTNY.
FIRST DISTRICT APPELLATE PROJECT
730 HARRISON ST, STE. 201
SAN FRANCISCO
CA 94102

3. Service Type
   ☒ Certified Mail   ☐ Express Mail
   ☐ Registered   ☐ Return Receipt for Merchandise
   ☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)

7007 0220 0001 9093 5728

PS Form **3811**, February 2004     Domestic Return Receipt     102595-02-M-1540

---

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

OFFICIAL USE

| | |
|---|---|
| Postage | $ $0.41 |
| Certified Fee | $2.65 |
| Return Receipt Fee (Endorsement Required) | $2. |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| Total Postage & Fees | $ $5.21 |

Postmark Here
22 AUG 16 2007
USPS

Sent To DIRECTOR/SUPERVISING ATTNY,
FIRST DISTRICT APPELLATE PROJECT
Street, Apt. No.; or PO Box No. 730 HARRISON ST, STE. 201
City, State, ZIP+4 SAN FRANCISCO, CA 94102

PS Form 3800, August 2006     See Reverse for Instructions

Monday, July 16, 2007
Ann Williams
2251 Nobili Ave.
Santa Clara, CA 95051

Napa County Superior Court
Main Courthouse—825 Brown Street
P.O. Box 880
Napa, CA  94559-0880

RE:    CR 114643
       People v. Curtis Kimber
       Notice of Appeal

TO THE SUPERIOR COURT:

      I wrote an inquiry to this Court on April 19, 2007, and mailed the same by
certified mail (see enclosed receipt) to ascertain the status (if any) of my son's notice of
appeal, but I did not receive an answer. This is a little curious because I also mailed a
notice of appeal to my son via certified mail with return receipt on March 28, 2007, when
he was confined at San Quentin Prison as a result of the conviction he needs to appeal,
but I did not receive an answer to that either. (See the enclosed and attached initial
certified mail receipt)

      Please write and tell me what is happening with my son's notice of appeal. If he is
tardy it is not his fault and he is exempt from sanctions or late penalties due to the
"Prison-delivery" Rule.

Sincerely,
*Ann J. Williams*
Ann Williams

April 19, 2007

Ann Williams
2251 Nobili Ave.
Santa Clara, CA 95051

Napa County Superior Court
Main Courthouse(825 Brown Street
P.O. Box 880
Napa, CA  94559-0880

RE:       CR 114643
People v. Curtis Kimber
Notice of Appeal

TO THE SUPERIOR COURT:

        I am writing to the Court to make sure that my son does not miss the 60 day time limit to
file his notice of appeal to appeal the judgment and the sentence entered by this Court on
February 22, 2007, and that my son is allowed to appeal. On March 28, 2007, I mailed a Notice
of Appeal via certified mail with return receipt to my son, Curtis Kimber, who is incarcerated at
San Quentin Prison for him to sign and return to me to mail to this Court for him. When I paid
the postal service to send the notice of appeal to my son by certified mail with a signed return
receipt upon delivery, I was given the enclosed and attached initial certified mail receipt (See
the enclosed and attached initial certified mail receipt); but as of this date, I have not received
the signed receipt back in the mail from San Quentin Prison verifying the notice was received
by prison authorities and later given to my son.

        This issue is neither new nor novel. It has arisen recurrently over the years and has
been dealt with in a number of appellate decisions, and if my son's notice of appeal is untimely
due to the failure of the postal service or prison authorities to deliver the notice of appeal to my
son and return the signed return receipt to me the "Prison-delivery" Rule should excuse any
default. It is settled that in order to obtain such relief, a defendant must establish that the notice
of appeal was placed in the prison mail, or some other process of transmittal was commenced,
sufficiently in advance of the filing deadline that in the normal course of prison mailing and
United States postal procedures or other means of transmittal utilized, it would have been
received by the county clerk on or before the 60th day after judgment. (See People v. Casillas
(1990) 218 Cal.App.3d 1365, 1370.)

        My son's appointed counsel did not file a notice of appeal for him and my son is unable
to so on his own due to the constraints of his incarceration and his aptitude, and I believe that in
such a situation I should be permitted to assist him as "next friend" pursuant to Whitmore v.
Arkansas, 495 U.S. 149, 163-64, 110 S.Ct. 1717, 1727-28, 109 L.Ed.2d 135 (1990), and
because in Lewis v. Casey, 518 U.S. 343, 351, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996),
quoting Bounds v. Smith, 430 U.S. 817, 825, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), the Court
confirmed that inmates have a constitutional right of access to the courts that obligates prison
officials to provide some means, such as a prison law library or a legal assistance program,
"for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental
constitutional rights to the courts. (See Bear v. Kautzky , (2002) 305 F.3d 802, 806.)

        I am not well versed in the complicated procedures and intricacies of the law, so please
hold this letter and my son's notice of appeal to less stringent standards than the formal
pleadings drafted by lawyers. (See Haines v. Kerner, 404 U.S. 519 (1972); Baslistreri v.
Pacifica Police Dept., 901 F. 2d 696 (9th Cir. 1990); Noll v. Carlson, 809 F.2d at 1448 (1987);

1

**SENDER: *COMPLETE THIS SECTION***

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____  ☐ Agent
                           ☐ Addressee

B. Received by *(Printed Name)*    C. Date of Delivery

D. CRAVEA

1. Article Addressed to:

NAPA COUNTY SUPERIOR
     COURT —
MAIN COURTHOUSE
(825 BROWN ST.)
NAPA, CA 94559-
              0880

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☒ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? *(Extra Fee)*            ☐ Yes

2. Article Number
   *(Transfer from service label)*        7006 2760 0000 4108 0650

PS Form **3811**, February 2004        Domestic Return Receipt        102595-02-M-1540

---

**U.S. Postal Service**™
**CERTIFIED MAIL**™ **RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

| | |
|---|---|
| Postage | $ $0.63 |
| Certified Fee | $2.40 |
| Return Receipt Fee (Endorsement Required) | $1.85 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 |
| Total Postage & Fees | $ $4.88 |

Postmark SANTA CLARA CA 95051 #1 APR 24 2007 USPS MISSION

Sent To
NAPA COUNTY SUPERIOR COURT
Street, Apt. No.; MAIN COURTHOUSE
or PO Box No. (825 BROWN ST.)
City, State, ZIP+4 NAPA CA 94559-0880

7006 2760 0000 4108 0650

PS Form **3800**, August 2006        See Reverse for Instructions

Monday, July 16, 2007
Ann Williams
2251 Nobili Ave.
Santa Clara, CA 95051

California Court of Appeal
First Appellate District
350 McAllister Street
San Francisco, California 94102

RE:    People v. Curtis Kimber
       Napa County Superior Court #CR 114643
       Notice of Appeal

TO THE COURT OF APPEALS:

I am writing because I mailed a notice of appeal to the Napa County Superior
Court months ago and I do not know if it has been processed yet. On April 19, 2007, I
mailed an inquiry to the Napa County Superior Court via certified mail (See enclosed
receipt) but I did not receive an answer.

I would like to make sure that my son does not miss the 60 day time limit to file
his notice of appeal to appeal the judgment and the sentence entered by the Napa Court
on February 22, 2007, and that my son is allowed to appeal.

On March 28, 2007, I mailed a Notice of Appeal via certified mail with return
receipt to my son, Curtis Kimber, who was at the time incarcerated at San Quentin Prison
for him to sign and return to me to mail to this Court for him. He has since been returned
to Napa State Hospital in Napa County. When I paid the postal service to send the notice
of appeal to my son by certified mail with a signed return receipt upon delivery, I was
given the enclosed and attached initial certified mail receipt (See the enclosed and
attached initial certified mail receipt); but as of this date, I have not received the signed
receipt back in the mail from San Quentin Prison verifying the notice was received by
prison authorities and later given to my son.

This issue is neither new nor novel. It has arisen recurrently over the years and
has been dealt with in a number of appellate decisions, and if my son's notice of appeal is
untimely due to the failure of the postal service or prison authorities to deliver the notice
of appeal to my son and return the signed return receipt to me the "Prison-delivery" Rule
should excuse any default. It is settled that in order to obtain such relief, a defendant must
establish that the notice of appeal was placed in the prison mail, or some other process of
transmittal was commenced, sufficiently in advance of the filing deadline that in the
normal course of prison mailing and United States postal procedures or other means of
transmittal utilized, it would have been received by the county clerk on or before the 60th
day after judgment. (See People v. Casillas (1990) 218 Cal.App.3d 1365, 1370.)

1

If a judgment of conviction is entered upon a plea of guilty or nolo contendere, the defendant shall, within 60 days after the judgment is rendered, file as an intended notice of appeal the statement required by section 1237.5 of the Penal Code; but the appeal shall not be operative unless the trial court executes and files the certificate of probable cause required by that section. Within 20 days after the defendant files the statement the trial court shall execute and file either a certificate of probable cause or an order denying a certificate and shall forthwith notify the parties of the granting or denial of the certificate.

I respectfully request the Appeals Court to examine this manner and find out what happened to my son's notice of appeal.

Sincerely,

*Ann P. Williams*

Ann Williams

Acting as Next Friend for disabled son pursuant to *Whitmore v. Arkansas*, 495 U.S. 149, 163-64, 110 S.Ct. 1717, 1727-28, 109 L.Ed.2d 135 (1990), and any and all other and additional applicable decisions and laws.

2

1  Curtis Kimber
   High Desert State Prison
2  475-750 Rice Canyon Road
   Susanville, California 96130
3  In pro se

4

5

6

7  .

8       **IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**

        **IN AND FOR THE COUNTY OF NAPA**
9

10  THE PEOPLE OF THE STATE          | No. CR 114643
    OF CALIFORNIA,
11                                    | **NOTICE OF APPEAL AND REQUEST**
                                      | **FOR CERTIFICATE OF PROBABLE**
12            Plaintiff,              | **CAUSE IF NECESSARY.**

13       v.

14  CURTIS KIMBER,

15            Defendant.

16  ───────────────────────────────────────────────
                          **Notice**              ˙˙
17       Defendant hereby submits this notice of appeal, pursuant to Penal Code, Section

18  1237.5, to appeal the judgment and the sentence entered by this Court on February 22,

19  2007.

20       Defendant respectfully states that he wants to appeal the denial of his federal and

    state constitutional rights due to the ineffective assistance of counsel he was provided and
21
    due, to all other provisions of law and grounds presented by any method or modality
22  before and after conviction and sentencing.

23       Defendant respectfully requests the Court to execute and file a certificate of

24  probable cause for such appeal with the county clerk or an order denying a certificate

    within 20 days, and shall forthwith notify the parties of the granting or denial of the
25  certificate if this is necessary in this case.

26  ///

27  ///

                                      1

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF NAPA

THE HONORABLE J. MICHAEL BYRNE, JUDGE


--oOo--


| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. CR114643 |
| ) | |
| CURTIS MICHAEL KIMBER, ) | |
| ) | |
| Defendant. ) | |


--oOo--


REPORTER'S TRANSCRIPT OF TESTIMONY AND PROCEEDINGS

AT TIME OF SENTENCING

--oOo--


Napa, California
Thursday, February 22, 2007
1:30 p.m.


Reported by:
LINDA SHRYACK, CSR NO. 12104

```
                          --oOo--
                  A P P E A R A N C E S
                          --oOo--
```

For the People:            GARY LIEBERSTEIN
                           District Attorney
                           931 Parkway Mall
                           Napa, California 94559

                           By:  GARY VAN CAMP
                           Deputy District Attorney


For the Defendant:         PUBLIC DEFENDERS
                           County of Napa
                           1127 First Street
                           Napa, California 94559

                           By:  RICHARD GATES
                           Deputy Public Defender

--oOo--

I N D E X

--oOo--

|  |  | Page |
|---|---|---|
| APPEARANCES |  | 2 |
| PROCEEDINGS |  | 4 |

--oOo--

|  |  | PAGE |
|---|---|---|
| REPORTER'S CERTIFICATE |  | 25 |

```
                                                                4
 1   FEBRUARY 22, 2007                             1:30 p.m.
 2                           --oOo--
 3                   The above-entitled matter came on regularly
 4   this day for hearing before the Honorable J. MICHAEL BYRNE,
 5   Judge.
 6                   GARY LIEBERSTEIN, District Attorney, County
 7   of Napa, 931 Parkway Mall, Napa, California 94559,
 8   represented by GARY VAN CAMP, Deputy District Attorney,
 9   appeared as counsel on behalf of the People.
10                   PUBLIC DEFENDERS, County of Napa, 1127 First
11   Street, Napa, California, 94559, represented by RICHARD
12   GATES, Deputy Public Defender, appeared as counsel on
13   behalf of the Defendant.
14                   The Honorable J. MICHAEL BYRNE, Judge
15   presiding.
16                   LINDA SHRYACK, CSR NO. 12104 Official
17   Shorthand Reporter for the County of Napa, was duly present
18   and acting.
19                   The following proceedings were then and
20   there taken, to wit:
21                   P R O C E E D I N G S
22        THE COURT.  Let's call the matter of Curtis Michael
23   Kimber.  It's here for sentencing.  Do you waive any
24   arraignment, judgment, and sentence at this time?
25        MR. GATES:  Yes.
26        THE COURT:  Is there any legal cause?
27        MR. GATES:  No legal cause.
28        THE COURT:  All right.  I've read and considered the
```

5

1   probation report.  I'll, obviously, listen to comments of

2   counsel.  See what everyone's position is.  Do you want to

3   go first, Mr. Gates?

4       MR. GATES:  That would be fine.  This is one of those

5   cases that, you know, I'm sure is troubling to everyone.

6   Yet it's troubling to me, because I think the probation

7   report really reflects that probation's just throwing up

8   their hands and saying, we do not know what to do.  The

9   conclusion that he doesn't have the ability to comply with

10  the reasonable orders of probation, in most cases, allows

11  one to infer that because the person's not amenable, that

12  probation is not appropriate.  I think that's very -- I

13  think it's really irrelevant in this particular case.

14      If you look at the recommend probation report, and you

15  look at the criteria that are cited in that report,

16  initially, they, they cite that the circumstances of the

17  crime are different compared to other instances of the same

18  crime, in that the defendant is a ward at the Napa State

19  Hospital.  He was on an LPS conservatorship.  He wasn't

20  there as a PC patient.  He was on a conservatorship.  And

21  he had never been convicted of a crime.  Never, until he

22  was placed, as part of his conservatorship at Napa State

23  Hospital, did he ever have, you know, any criminal conduct

24  like this.

25      At the time of this report, they said it does not

26  appear he has the mental faculties to comply with these

27  terms of probation.  And, you know, that's probably true.

28  He has brain damage, self-inflicted blows with a hammer, or

6

1   something, I believe, that caused brain damage.

2       MR. VAN CAMP:  I don't believe there's any information

3   in the probation report about this, and I'm going to object

4   to any comments that are outside the scope of the probation

5   report.

6       MR. GATES:  Well, you know, I, I, the Court accepted

7   the reports from Dr. Inman, and I think it was Dr. Geisler,

8   some 1368 reports, and I believe that information is in

9   those reports.  And I personally sent that information to

10  the probation department.

11      THE COURT:  If they're in, those reports were

12  admitted, and I did read those reports.

13      MR. GATES:  This is --

14      THE COURT:  That's part of the probation violation

15  hearing.  Okay.

16      MR. GATES:  This defendant is a tormented human being,

17  who feels anxiety and fear almost constantly.  He was so

18  unable to understand the proceeding previously, he -- I

19  believe he's competent now, but he wasn't for quite some

20  time.  And he, he just really struggles.  He's expressed

21  remorse.  They said that it's likely he'd be a danger to

22  others if released.  Nobody's asking that he be released.

23  He belongs exactly where he is in a state hospital that has

24  been transformed from a treating facility into a penal type

25  of hospital setting that has a 10 or 12, maybe 15 foot high

26  chain-linked fence with tubular barbed wire all around it.

27  It's run like a, it's run like a prison.  You can't get in

28  there if you wear khaki pants.  I've been turned away a few

7

 1 | times.  I forget I can't have brown.  You can't have any
 2 | brown or khaki.  And they're very strict about that.  It
 3 | was designed for people like Curtis Kimber, and if the
 4 | Court sends him to prison, he's not, he's not going to stay
 5 | in prison.

 6 |      THE COURT:  I know that.

 7 |      MR. GATES:  They're going, they're going to, it will
 8 | take them 10 minutes to figure out that he can't survive in
 9 | prison.  And they're going to send him back to a state
10 | hospital, and it just, it just doesn't make any sense.
11 | He's not hitting people because he's a criminal and he
12 | wants to hurt people.  He's just tormented.  People do
13 | things and say things that he just, he can't, he can't cope
14 | with.  He doesn't have good controls.  He doesn't have
15 | control of himself, and it's not his fault.

16 |      THE COURT:  Let me ask you this:  And much of what you
17 | say is part of the frustration of the system, I know.  I'm
18 | not disagreeing with a lot that you've expressed concern
19 | about.  But he's got 616 days credit.  How much is the low
20 | term, two years?

21 |      MR. VAN CAMP:  Yes, your Honor.

22 |      THE COURT:  It's just a matter of -- we can't put him
23 | in the county jail.

24 |      MR. GATES:  What's going to happen to him, though?

25 |      THE COURT:  What's going to happen anyway?  There's
26 | still, there's a need for control.  I don't think he's,
27 | he's not a malicious person.  I don't disagree with you on
28 | that.  He's not a malicious person.  He's got some serious

8

```
 1   mental issues that we don't have the ability
 2   psychologically or medically to take care of.  How many
 3   people are in the prison system because of that?  What
 4   percentage of the people that you represent have some form
 5   of that in differing ways?  It's part of the frustration.
 6   I'm not saying that's what I'm going to do, but -- I'm
 7   listening.  Isn't he going to be back at Napa State
 8   Hospital anyway within about a month?
 9        MR. VAN CAMP:  No, your Honor.
10        THE COURT:  Why?
11        MR. VAN CAMP:  If he's sent to prison, and he's unable
12   to handle the prison system, he's evaluated at San Quentin
13   in their medical unit, he would probably be transferred to
14   Atascadero as a 26, under Penal Code section, I think it's
15   2684, which allows prisoners to be transferred to a
16   medical -- to that hospital.  Napa doesn't take those,
17   because --
18        THE COURT:  Right.
19        MR. VAN CAMP:  And at the end of his term, if he's
20   unable to be safely paroled, which probably would be the
21   conclusion, then we start another proceeding have him
22   designated, I think it's 2972, mentally disordered
23   offender, and we start a new proceeding, and get him
24   declared as a mentally disordered offender.  And those have
25   to be renewed, I believe, every two years, or maybe it's
26   even every year.  And now --
27        MR. GATES:  I think the law just changed on that.  I'm
28   not sure.
```

9

1    THE COURT:  I didn't think it included this offense.
2  That's my take on it.

3    MR. VAN CAMP:  It's anybody that's released on parole,
4  and if they're unable to be released on parole, which
5  presumably would be the parole's decision, due to his
6  problems, then he can be declared a mentally disordered
7  offender, and then we, Napa state does take those, along
8  with the other state hospitals, but they're, you know,
9  designated that way.  They're reclassified.  They're put
10  behind the fence, and that's why we have those dangerous
11  people back there, too, parolees that can't be paroled,
12  mentally disordered offenders, along with 1026 offenders,
13  and 1370s.

14    THE COURT:  All right.

15    MR. VAN CAMP:  So that's kind of the procedure.  And I
16  was going to make a recommendation.

17    THE COURT:  Go ahead.

18    MR. VAN CAMP:  That the Court -- and I'm not trying to
19  interrupt.

20    THE COURT:  I'll give you both -- I started the
21  interruption, and I'll make sure I listen to both of you.
22  I'm concerned about making the right decision.

23    MR. VAN CAMP:  We've had some cases here recently that
24  we're tracking, but the recommendation of this court was
25  that he be referred as 2684, by the prison system.  It's
26  not mandatory, but it's a recommendation that the Court can
27  make in tracking one of those cases for another judge
28  that -- make sure that that happens, or it could be subject·

 1 | to recall if that didn't happen.

 2 |     So that's the recommendation I was going to make, is

 3 | that you do send him to prison with a 2684 recommendation.

 4 | So I'm sorry, counsel, for jumping in.

 5 |     THE COURT:  No, it's all right.  You were responding

 6 | to what -- I want to hear what you have to say.

 7 |     MR. GATES:  The bottom line is we really end up in the

 8 | same place, I guess.

 9 |     THE COURT:  I agree.

10 |     MR. GATES:  But he just gets to get terrified for a

11 | short while.  It seems to me that's the only difference, is

12 | that he gets put into a situation that will just absolutely

13 | terrify him for a while.

14 |     THE COURT:  Well, he goes to a reception center,

15 | basically.  Where is the reception center?

16 |     MR. VAN CAMP:  San Quentin.

17 |     THE COURT:  San Quentin is the reception center.  It

18 | would be terrifying for me.  I'm not --

19 |     MR. GATES:  I just think it's going to be devastating

20 | for him.  And it just seems that we're going around in a

21 | circle, and we spend a lot of money on these proceedings.

22 | And, you know, I know everyone has to evaluate their own

23 | responsibility in the criminal system, justice system and

24 | decide what they think is right, but...

25 |     THE COURT:  Well, what alternative -- I mean, you've

26 | stated the problem very well.  But --

27 |     MR. GATES:  Well, the alternative -- I'm just

28 | suggesting that probation doesn't have to do anything in

11
1 | this case. They haven't done anything in this case.
2 | THE COURT: No.
3 | MR. GATES: They don't, I don't have to see him. They
4 | don't do anything. So whether he complies with anything,
5 | really doesn't matter. The only thing that anybody is
6 | concerned about is that he does his best not to hit people.
7 | THE DEFENDANT: I won't hit anybody again, sir.
8 | MR. GATES: He's in an appropriate setting. He's
9 | behind the fence now.
10 | THE COURT: But they're --
11 | MR. VAN CAMP: But, you know --
12 | THE DEFENDANT: If I hit anyone again, I promise you
13 | can send me to prison. I won't hit anyone again.
14 | THE COURT: I know. I don't think you do it with full
15 | intention. I'm not judging you as somebody that's
16 | something evil or wrong. I realize there are times when
17 | you have difficulty having control. And that's, that's
18 | not -- it's not deep down inside who you are, your fault.
19 | It's other physical problems that you have that create
20 | this.
21 | THE DEFENDANT: People are, you know, just doing all
22 | they can to irritate me, you know. They're just doing --
23 | THE COURT: And they will again.
24 | THE DEFENDANT: -- rude things. I'll just ignore it.
25 | I won't let this happen again. I promise. Just don't send
26 | me to prison, sir, your Honor.
27 | MR. GATES: Before we --
28 | THE COURT: Go ahead.

12

1   MR. GATES: -- go any further, I just want to indicate
2   that Ann Williams, Curtis' mother, is present in court. I
3   promised her that I would let the court know that she did
4   want to say a few words if the Court is inclined to allow
5   that.

6   THE COURT: Of course, I am. Ms. Williams, go ahead.

7   MS. WILLIAMS: Should I come forward?

8   THE COURT: Whatever you're comfortable with. Would
9   you be more comfortable coming up?

10  MS. WILLIAMS: Probably not too comfortable anywhere.

11  THE COURT: That's all right.

12  MS. WILLIAMS: My name is Ann Williams, and I'm Curtis
13  Kimber's mother. And my son is not a criminal. He's very
14  medicated, and a lot of the medication concurs assaultive
15  behavior. He never, he graduated from high school. He
16  went into the marine corps, and was discharged as
17  emotionally immature, not mentally ill. Unfortunately, he
18  got trapped into the mental health system. And it's true
19  he has hit some people recently, well, in the past number
20  of years. And he's a strong gentleman, so he can do some
21  damage when he hits somebody. But he is being taunted, and
22  unfortunately, it's not only by the clients, it's also by
23  some of the staff, ignoring what goes on. And it's not
24  going to get any better within this mental health system,
25  and we'd love to have him home. And within the mental
26  health system, and the medication -- if you knew how much
27  medication he's on, that's -- and in the Department of
28  Justice's report, it states that the medication makes them

 1   agitated, and that's what he is.  I speak to him once or
 2   twice everyday.  I live in Santa Clara, and I tell him to
 3   just ignore, use self-discipline, and he knows right from
 4   wrong.  He knows what he has to do.  But he is -- and I
 5   tell him, it would be difficult for me, too.  He's in a
 6   very, very difficult situation.  And the hole is going to
 7   get deeper and deeper if something different isn't done.
 8   But, your Honor, prison -- even the People he's around
 9   right now are not the People he really should be around.
10   There are a lot of criminals where he --

11        THE DEFENDANT:  I won't let it get deeper and deeper.

12        MS. WILLIAMS:  He won't let it get deeper and deeper.

13   We have great talks on the phone, and I believe the end of

14   the story will be a good one.  I pray a lot.

15        THE COURT:  Good for you.

16        MS. WILLIAMS:  And I know the Lord is answering my

17   prayers, and Curtis knows a lot of scriptures, so the end

18   of the story will be a good one.

19        THE COURT:  I hope so.

20        MS. WILLIAMS:  But I hope it comes soon.

21        THE COURT:  All right.  Thank you.

22        MS. WILLIAMS:  And he is concerned that he hasn't

23   really been able to say much on his own behalf, because in

24   the last incident where he did hit someone, that young man

25   was really taunting him, told him he stunk, and pushed, got

26   in front of him in line, and he wanted Curt to hit him, and

27   unfortunately, Curt reacted rather than ignoring, so...

28        THE COURT:  And became a problem for staff after it

14

1  took place.

2      MS. WILLIAMS:  Pardon?

3      THE COURT:  And became a problem for staff after it

4  took place.

5      MS. WILLIAMS:  Probably.  I'm not denying it.  But I

6  have two other children, and we want our family back.

7      THE COURT:  That I can't do.

8      THE DEFENDANT:  Please don't send me to prison, sir,

9  your Honor, please.

10      THE COURT:  All right.  All right.

11      THE WITNESS:  Give me one more chance.

12      MR. VAN CAMP:  Your Honor, if I could be heard.

13      THE COURT:  I'll give you the last word.  You do have

14  a right to give your position before me, also.  Of course,

15  you know that.

16      MR. VAN CAMP:  You know, I think that the reason we

17  prosecute these cases is to protect the staff and the

18  victim, and the other clients out there, the other

19  patients.  And in this case, the underlying offenses, he

20  attacked a staff member and caused an orbital fracture to

21  his eye, all because he wasn't allowed, he wasn't given a

22  medication that he wanted, an Ativan that -- he had already

23  had two of those earlier in the day.  He was mad at the

24  staff for refusing to give him that, and goes up and

25  attacks them and fractures his eye.  And then, you know,

26  we've had numerous, less serious assaults out there, and

27  now he's back to assaulting staff again, Demetrius

28  Henderson and another patient.  And his mother has just

15

1   told the Court that he only did it because the victim
2   wanted to be hit, which I don't believe to be true.  And
3   these, these other patients out there don't want to be hit
4   by Mr. Kimber.  And the staff certainly doesn't want to be
5   hit.

6         THE DEFENDANT:  I'm not going to hit anybody again.
7         MR. VAN CAMP:  And when he was granted probation
8   originally by this court, by Judge Bennett, I don't
9   think -- we opposed it then, and said that he's not
10  amenable, which basically was the conclusion of the
11  probation department, although they did recommend
12  probation, although they said in their report it didn't
13  look like he was amenable.  And he hadn't been amenable.  I
14  agree that he hasn't been supervised, and one of the things
15  that Judge Bennett told him at the time was that he was
16  doing him a favor by granting him probation.  And he was
17  doing him a favor, and didn't give him any jail time, and
18  sent him back to state hospital.  And now he's back there
19  on felony probation and still assaulting people.  And I
20  think that by sending this man to prison, after he's been
21  given a chance on felony probation, and now it's been
22  proven that he's assaulting staff and patients again.  We
23  are, in effect, trying to re-classify him, getting him off
24  to the prison system, have him identified as a prisoner,
25  have him dealt with as I recommended, that we recommend,
26  that he be evaluated as a 2684, and perhaps after a short
27  stay at San Quentin, he'll be transferred to Atascadero and
28  serve out his prison sentence there.  If he's able to be

16

1   released on parole, he will. If he's not, they'll
2   determine that he's mentally not able to handle -- mentally
3   a danger, if he should be paroled. We'll have another
4   proceeding. We'll have to prove that he's a mentally
5   disordered offender, and then he'll be sent back to the
6   state hospital system as a 2972, and he'll be classified
7   again differently. He won't be housed on a unit with other
8   conservatees. These are other people who haven't committed
9   any crimes who are, for whatever reason, been conserved by
10  the courts, as this defendant was initially. And now
11  they're being -- we, we don't want them subjected to
12  criminal activity and physical assault. So if he comes
13  back to Napa, which I don't know is a -- I think the
14  preference, from the way that these people are assigned
15  under 2972, is that they go back to their original county
16  of commitment. So I would expect him to come back to Napa,
17  but he'll be 2972. He'll be housed in a different unit.
18  He'll be away from other conservatees. There'll be a
19  higher level of protection to the staff. They'll be aware
20  of who he is. He'll be classified differently. They'll
21  try to watch him differently, but I don't know that it will
22  be the end of the assaults, because we have 2972s that we
23  prosecute, too, and 1026s, and other things. But at least
24  they're classified differently. And I think that he's had
25  his chance on probation and didn't succeed. I don't think
26  the Court has any reasonable decision other than to send
27  him to prison and recommend that he be evaluated as a 2684,
28  and we no longer have him on probation out here.

1  Submitted.

2      THE COURT:   Okay.  Mr. Gates, I'll give you the final

3  word if you want to touch on anything.  Obviously, it's

4  going to effect your client the most.

5      MR. GATES:   I understand.  I know the Court

6  understands the possible --

7      THE DEFENDANT:   Your Honor --

8      THE COURT:   I want to hear from your attorney.  He has

9  the most experience in this.  And frankly, his judgment is,

10  although I may disagree with it, I respect his judgment

11  based on his experience.  So why don't you let him talk for

12  you.

13      MR. GATES:   I know the Court understands those

14  procedures, but for somebody with this man's disability, it

15  just doesn't seem right that this classification -- and

16  putting him into a different system where he's going to be

17  with more hardened criminals.  That seems to be the, you

18  know, the goal of these prosecutions.  And for many people,

19  you know, I can accept that.  But this is not a man who has

20  a long record, who, you know, has a criminal mindset.  This

21  is a man who is, of no fault of his own, is mentally ill.

22  And even, you know, even the offense -- Ativan, is

23  something that relaxes people.  And it's, I think they call

24  it a p.r.n.  It's when somebody is really having, you know,

25  a lot of anxiety, and they're agitated, that's what they

26  give them.  I mean, I know a little bit about that.  And I

27  don't know the situation is -- I don't know how many they

28  can give you.  But it really seems like, when somebody is

18

1   really agitated, giving them a p.r.n is what they ought to
2   do.   And it certainly doesn't justify the hitting, but it
3   just shows the, the kind of frustration that Curtis lives
4   with, you know, everyday.  And, you know, the staff out at
5   that hospital has a very difficult job.  They're under
6   paid.  They're under-skilled.  They, because it's
7   classified as a hospital, maybe they can't make it as
8   secure.  I mean, it just, it creates a problem.  But it is
9   what the state has established, and said, this is what we
10  need.  We need a place where people who are mentally ill
11  and have engaged in violent conduct can be.  And it's my
12  understanding that he's now behind the fence.  He's not
13  about other conservatees.  And, if you'd look, even in the
14  original report, you know, there's a number of
15  circumstances in mitigation.  I'm sure the Court's aware of
16  that.

17       THE COURT:  All right.  I don't think -- that part is
18  not at issue.

19       MR. GATES:  But I think those are just as relevant on
20  the issue of whether or not he ought to be in prison at
21  all.  You know, and I, I -- it does effect his culpability,
22  and I know his record is listed previously.  But there was
23  some, you know, mental duress that was going on.  And it's,
24  it's just a really, it's a really sad thing.  The man got
25  injured, and he doesn't deserve to be injured.  But Curtis
26  is not actively trying to hurt people.  He perceives things
27  in a way that, you know, may be unreasonable, may not, may
28  not even comport completely with reality.  And he just

19

1  can't help himself. And it just, to do this whole
2  classification thing to insure that he's with more
3  criminally sophisticated people, just seems like it's, it
4  just seems cruel.
5       THE COURT: Well, all right.
6       MR. VAN CAMP: Your Honor, I have --
7       THE COURT: Unless it's something material.
8       MR. VAN CAMP: I don't agree with the time credit
9  calculation, so if we get to that point.
10      THE COURT: Tell me right now, because obviously --
11      MR. VAN CAMP: I'm not sure where the 4019 credits are
12 being applied here. Let's start out with the first. I
13 don't have any problem with that first one-day credit on
14 11/6/2003, but on 9/26/05 to 11/17/05, on 11 -- sorry, the
15 Court found him to be incompetent on 10/26/05, so I think
16 on that point forward, he's not entitled to any 4019
17 credits. 1368 was declared on 10/5/05, and criminal
18 proceedings were suspended.
19      THE COURT: What date?
20      MR. GATES: 10/5/05. There was a trial held on
21 10/26/05. Judge Kroyer found him on that date to be
22 incompetent, so I'm just --
23      THE COURT: 10/26.
24      MR. VAN CAMP: To concede that maybe that's the date.
25      THE COURT: That's when the finding was done.
26      MR. VAN CAMP: 4019s ought to stop.
27      THE COURT: So you got five, five and 17.
28      MR. VAN CAMP: And then from that date, he

20

 1    apparently -- I think he did go to Napa State and was

 2    returned as competent.  Well --

 3         THE COURT:  I think they void that in there, because

 4    they're only giving him 100 days credit.

 5         MR. VAN CAMP:  I'm just not sure where those 100 days

 6    are being applied.  They don't tell us.

 7         THE COURT:  I thought it was on the low side.

 8         MR. VAN CAMP:  Well, he doesn't get any 4019s for any

 9    time when he was serving 1368 or 1370 time.

10         THE COURT:  Okay.  If --

11         MR. VAN CAMP:  If we could, could just -- then they

12    said 11/17/06 was the time that he ended at Napa State.  I

13    don't know when he was found competent again following that

14    first -- to go back, should have been a certificate filed.

15    I think what happened is we brought him back on a violation

16    of probation while he was 1368, and the judge ruled that it

17    was still 1368 all that time.  So I don't think he's

18    entitled to any back in --

19         MR. GATES:  I don't think this report is wrong.  If

20    you just take the one day, the 53 days, the 70 days and the

21    15 days that he's in the jail.

22         MR. VAN CAMP:  But the 70 days he was ruled to be,

23    still be incompetent during that period of time.

24         THE COURT:  Some of the 70 days.  You got about 23

25    days.

26         MR. GATES:  Yeah, but you know, if he's in the jail,

27    he's not getting treatment.  That's, that's the whole point

28    of that.  If the proceeding is being suspended because

21

1  you're incompetent, you're supposed to be getting
2  treatment.  He's not getting any treatment during that 70
3  days.

4      MR. VAN CAMP:  Well, he's not entitled to 4019 credits
5  for that period of time either, because the judge ruled
6  that he was still incompetent during that entire period of
7  time.

8      MR. VAN CAMP:  So --

9      THE DEFENDANT:  Your Honor, could I say something?

10     THE COURT:  Just a second.  I'm trying to do some
11  math.  I'll give you a chance in a minute.

12     MR. VAN CAMP:  I think it was.  I'm sorry.

13     THE COURT:  Well, he gets actual time credit.

14     MR. VAN CAMP:  He gets actual time credits for all the
15  time he was in the hospital or in jail while he was 1370.
16  And I think --

17     THE COURT:  What about Metropolitan State Hospital?

18     MR. VAN CAMP:  That was his most recent 1368 that was
19  started 2/15/06.  I guess he didn't actually get down there
20  until 3/29/06.

21     MR. GATES:  We had to file a writ to get him out of
22  the jail.  All this time he's supposed to be getting
23  treatment, desperate.  We had to file a writ, and then they
24  ended up --

25     THE COURT:  I'll give him credit for it.

26     THE DEFENDANT:  Your Honor, could I say something?

27     THE COURT:  All right.

28     THE DEFENDANT:  I am receiving -- I've got an anger

1   management class at Napa, at the hospital, at Napa State

2   Hospital. And I've been attending that, and it's been

3   helping me. I'd like to continue going to that class.

4       THE COURT: Well, it will take some time before things

5   are done, but all right. I understand your concern about

6   that.

7       All right. Is the matter submitted?

8       MR. VAN CAMP: Yes, your Honor.

9       MR. GATES: Yes, your Honor.

10      THE COURT: All right. All right. I don't ever find

11   these kind of cases easy to do. You don't have something

12   that was clearcut, fits into the traditional mold of

13   somebody that uses maliciousness towards somebody and hurts

14   someone. But we do have levels of when someone has decided

15   to be competent under the law. He was determined to be

16   competent at the time of the offense and placed on

17   probation. At that time the underlying offense was, the

18   underlying original offense was a serious assault. It was

19   not a minor assault. It was a serious assault. And he was

20   given, by the Court, probation at that time. And there has

21   to be some accountability, even for someone that has a

22   difficult time, not a moral accountability, but just a

23   accountability in relation to the system. That's what I

24   was -- and I have numerous assaults that have taken place

25   in the probation report since the time of granting

26   probation, assaults to other workers in the location, and

27   then the final one that we have the hearing on, on the

28   violation, but other assaults taking place, other acts of

 1 | violence in the pattern. And now after having been on
 2 | probation since -- I forgot when the probation was, but
 3 | 2003, we have a series of serious assaults that have taken
 4 | place. I realize for many of these, he does not have
 5 | complete control over what he does, but there is a physical
 6 | response where he knows he's hurting someone. And it may
 7 | be, antagonize him and problems, but he does understand
 8 | that that's taking place.
 9 | THE DEFENDANT: Your Honor --
10 | THE COURT: Well, let me finish.
11 | THE DEFENDANT: Okay. Sorry.
12 | THE COURT: I'm trying to give you my reasons, so you
13 | understand what I'm thinking and understand that I am
14 | considering what you have to say.
15 | And we've reached a point where probation can't work
16 | any further. It has to be something other than probation.
17 | I do think there is a need for a more stringent supervision
18 | to make sure that he is on the line, and it is frustrating
19 | to, given the concerns of his mother, and his concerns of
20 | what took place, but I don't think it's proper to extend
21 | probation any further in this case. There should be a more
22 | strict level of support.
23 | All right. In this matter, the re-establishment of
24 | probation is denied. The judgment of the sentence of this
25 | Court is defendant be committed to state prison. The Court
26 | will select the low term of two years. And I will, as
27 | indicated, I will give him credit for a total of 616 days.
28 | He's ordered to pay a $200 victim restitution fund. Upon

24

1   completion of his commitment, he will be on parole. The

2   Court does make a recommendation under section 260 --

3   excuse me 2684. Is that the welfare and institutions code?

4        MR. VAN CAMP: Penal Code.

5        THE COURT: It's the Penal Code -- for an evaluation

6   under that provision. The defendant is granted parole. If

7   he violates parole, he is re-committed to state prison.

8   He's ordered to pay an additional $200 victim restitution

9   fund. He is ordered to remand to the custody of the

10  sheriff for the forthwith commitment. All right. We'll be

11  in recess.

12       THE DEFENDANT: Your Honor --

13       THE COURT: Yes.

14       MR. VAN CAMP: Your Honor, we'll contact the state

15  hospital and notify them that he's remanded to the jail

16  today. And they'll bring over whatever personal effects or

17  medication that he might need to go with him.

18       THE COURT: All right. All right. Good luck to you.

19       THE DEFENDANT: Please don't send me to prison, your

20  Honor.

21       THE COURT: I think I have to in this situation.

22            (Whereupon the proceedings were concluded.)

23                         --oOo--

24

25

26

27

28

25

1    STATE OF CALIFORNIA    )
                            ) ss.
2    COUNTY OF NAPA         )

3

4

5                    CERTIFICATE OF OFFICIAL REPORTER

6              I, LINDA SHRYACK, CSR No. 12104 a duly qualified

7    and acting Official Shorthand Reporter of the Superior

8    Court of the State of California, in and for the County of

9    Napa, do hereby certify:

10             That I acted as the Certified Shorthand Reporter in

11   the case of THE PEOPLE OF THE STATE OF CALIFORNIA versus

12   CURTIS MICHAEL KIMBER, NSC No. CR114643.

13             That I took down in shorthand writing the testimony

14   and proceedings had therein.

15             That thereafter I transcribed the same into

16   typewriting.

17             That the foregoing pages 1 through 24, inclusive,

18   comprise a full, true and correct transcript of proceedings

19   had.

20             Dated this 15th day of March, 2007.

21

22             _____
               LINDA SHRYACK, CSR No. 12104
23             Official Shorthand Reporter
               County of Napa
24             State of California

25

26

27

28

1               SUPERIOR COURT OF CALIFORNIA

2                  COUNTY OF NAPA

3         The HONORABLE RICHARD A. BENNETT, Judge

4                 --oOo--

5   THE PEOPLE OF THE STATE OF CALIFORNIA, )

6               Plaintiff,   )

7   vs.                    )   No. CR114643

8   CURTIS MICHAEL KIMBER,      )

9              Defendant.   )

10                 --oOo--

11

12      REPORTER'S TRANSCRIPT OF PROCEEDINGS HAD

13          AT TIME OF SENTENCING

14                 --oOo--

15

16

17

18            Napa, California
           Thursday, November 6, 2003
19            8:30 O'Clock A.M.

20                 --oOo--

21

22

23   Reported By:

24   KAREN R. KRONQUEST, RPR
      CSR No. 7482

25

26

27        KAREN R. KRONQUEST, CSR No. 7482
          1111 Third Street, Room 230
          Napa, California 94559
28           (707) 299-1190

1                          --oOo--

2                        I N D E X

3                          --oOo--

4                                                    PAGE

5

6    APPEARANCES                                      2

7    PROCEEDINGS                                      3

8    CERTIFICATE OF REPORTER                          14

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

```
 1                        A P P E A R A N C E S

 2                             --oOo--

 3

 4      FOR THE PEOPLE:              GARY A. LIEBERSTEIN
                                     District Attorney
 5                                   County of Napa
                                     931 Parkway Mall
 6                                   Napa, CA  94559

 7                             BY:   GARY A. VAN CAMP
                                     Deputy District Attorney
 8

 9

10      FOR THE DEFENDANT:           TERRY DAVIS
                                     Public Defender
11                                   County of Napa
                                     1127 First Street
12                                   Suite 265
                                     Napa, California 94559
13
                               BY:   RICHARD J. GATES
14                                   Deputy Public Defender

15

16

17

18

19

20

21

22

23

24

25

26

27

28
```

```
 1   THURSDAY, NOVEMBER 6, 2003                    8:30 O'CLOCK A.M.
 2                           --oOo--
 3            The above-entitled cause came regularly this day
 4   for hearing before the Honorable RICHARD A. BENNETT, Judge.
 5            GARY A. LIEBERSTEIN, District Attorney, County of
 6   Napa, 931 Parkway Mall, Napa, California  94559, represented
 7   by GARY A. VAN CAMP, Deputy District Attorney, appeared as
 8   counsel on behalf of the People.
 9            TERRY DAVIS, Public Defender, County of Napa, 1127
10   First Street, Suite 265, Napa, California  94559,
11   represented by RICHARD J. GATES, Deputy Public Defender,
12   appeared as counsel on behalf of the Defendant.
13            The HONORABLE RICHARD A. BENNETT, Judge.
14            KAREN R. KRONQUEST, RPR, CSR No. 7482, Official
15   Shorthand Reporter for the County of Napa was duly present
16   and acting.
17            The following proceedings were then and there had
18   and taken, to wit:
19                      P R O C E E D I N G S
20            THE COURT:  People versus Curtis Kimber.
21            Hi, Mr. Kimber.
22            DEFENDANT KIMBER:  Hello.
23            THE COURT:  How you doing?
24            MR. VAN CAMP:  Gary Van Camp for the People.
25            MR. GATES:  Richard Gates on behalf of Mr. Kimber,
26   who's present in court in custody.
27            THE COURT:  Mr. Van Camp.
28            MR. VAN CAMP:  I have quite a bit to say about
```

1    this case, your Honor; maybe it's good it's at the end here.

2           THE COURT:  Is this the last case?

3           MR. GATES:  One other that I'll be filling out a

4    plea form on.

5           THE COURT:  Yes.

6           MR. VAN CAMP:  Well, first, there's information

7    that is not included in the report about the victim's

8    injuries in this case and that is that he had an orbital

9    blowout fracture of the eye socket area that required

10   surgery by a plastic surgeon.  So he did have surgery and

11   the medical records were in our file, I'm not sure why

12   Probation --

13          THE COURT:  It was hinted, but I didn't see the

14   nature, exact nature of the injury.

15          MR. VAN CAMP:  Yeah, he was really hurt.  Plus he

16   had other injuries on his abdomen and other places.  This

17   was a great bodily injury that was inflicted upon him by

18   this defendant.

19          MR. GATES:  Your Honor, I -- you know, I don't

20   think it's appropriate to make that argument.  The

21   enhancement was dismissed by the Prosecution and these

22   records were -- I mean, I there was an injury, but I think

23   it's improper to make that argument when they've agreed to

24   dismiss the enhancement and --

25          THE COURT:  I would share with both counsel that

26   the Court was interested in the type of injury.  As a matter

27   of compromise I was -- it's absolutely appropriate that the

28   People dismiss that special allegations.

KAREN R. KRONQUEST  (707) 299-1190

```
 1                    DEFENDANT KIMBER:  Can I say something, Judge?
 2                    THE COURT:  Just a second, Mr. Kimber.
 3                    DEFENDANT KIMBER:  Oh, I'm sorry.
 4                    THE COURT:  That's all right.
 5                    But the Court allows wide latitude in sentencing
 6          arguments and --
 7                    MR. GATES:  Very well.
 8                    THE COURT:  -- I'm going to overrule your
 9          objection.
10                    MR. VAN CAMP:  So, anyway, my point was I don't
11          know why that's not addressed in this Probation report
12          because I think the records were available and I understood
13          that they get police reports from our file.
14                    So here we have someone who has beaten up and
15          severely injured a psych tech at the State hospital and,
16          frankly, I don't know from any of this information why he
17          was even in the hospital.  Maybe Mr. Gates is gonna tell us
18          more about that.  That's something I thought that maybe
19          should have been addressed by this report but wasn't.  I
20          assumed it's on some type of conservatorship.  It sounds
21          like it's not a criminal commitment because he doesn't have
22          any criminal record.  So I'm assuming it's not an NGI or
23          1370 and it's some type of conservatorship.
24                    But nevertheless he knew what he did at this time,
25          he wasn't insane at the time of this offense; he knowingly
26          assaulted this psych tech who was severely injured and
27          yet -- I don't know.  Maybe she didn't have all the
28          information or whatever, but this recommendation for
```

1  basically one year probation and a hundred and 80 days to be
2  served at the State hospital is basically a nothing
3  recommendation.

4        This is not a person who should ever be put on
5  probation.  He's not amenable because of his status in the
6  State hospital, and it's our position on this case and
7  similar situations that occur out there that these people
8  who commit felony assaults and -- let me just direct
9  specifically to this defendant that this defendant who
10  committed a criminal assault here and severely injured this
11  person should go do State prison.

12        And, you know, I think that -- I don't see any
13  other alternative but that.  And, frankly, I'm not sure we
14  have enough -- you have enough information about him, maybe,
15  to make that determination other than the fact that he is at
16  the State hospital -- we're assuming it's a
17  conservatorship -- and he's not amenable to probation
18  because of his status out there.

19        And we think that the staff out there need to be
20  protected, that they -- even though they're dealing with
21  people with mental problems, obviously he's got mental
22  problems because he's there.  This victim didn't deserve to
23  be assaulted the way he was and severely injured and this
24  defendant needs to go to prison, and the prison has a way of
25  dealing with people that have mental problems.  And so her
26  comment in the Probation report that prison wouldn't be able
27  to deal with him, I think, is naive.  And they do have ways
28  of dealing with people that are mental patients who commit

1   crimes and this man should go to State prison for this

2   offense.

3              THE COURT:  Mr. Gates.

4              MR. GATES:  Well, I certainly agree with Mr. Van

5   Camp that Mr. Tatum didn't deserve to be struck.  And I

6   think Mr. Kimber accepts that and agrees to that.  But

7   Mr. -- this offense occurred in June of 2002.  And the

8   Criminal Complaint in this case was filed September 5th of

9   2003.  So for that entire 15 months Mr. Kimber -- well, up

10  to that date continues to be on the very same ward,

11  continues to have contact with Mr. Tatum.

12             Mr. Tatum indicated in the report that he had

13  Workers' Compensation, that he has been compensated for

14  almost all of his injuries.  He indicated there might be

15  some small amount of restitution that might remain to be

16  owing.

17             Mr. Kimber is on a LPS conservatorship.  One of

18  the problems obviously in this case is the fact that Napa

19  State Hospital doesn't provide records.  They don't send me

20  the records.  I ask for them and I have to subpoena them.

21  And when I do subpoena them they send them to the court and

22  tell the court that the court should have some in camera

23  hearing before I can have the records.  They wouldn't give

24  the records to Miss Green.  Ms. Green called out to the

25  hospital and spoke to somebody on the ward and they just

26  started laughing.  They couldn't understand why this case

27  had been filed.

28             THE COURT:  Who's Ms. Green?

KAREN R. KRONQUEST (707) 299-1190

```
 1              MR. GATES:  Isn't Ms. Green the Probation officer
 2    who wrote this report?  Kristy Green?
 3              THE COURT:  Crystal Villatoro.
 4              MR. GATES:  Oh.
 5              THE COURT:  So don't foul me up.  I'm barely able
 6    to follow.
 7              MR. GATES:  No, I know.  But I --
 8              THE COURT:  You talked to somebody named Green
 9    about this case?
10              MR. GATES:  No, I got a -- I could be wrong about
11    who it was.  I had Ms. Green on another case, but I was sure
12    it was her.
13              Whoever the Probation officer was, the Probation
14    officer called me and wanted me to help them get the records
15    and I advised her that I -- that the matter was on calendar
16    for those records.
17              THE COURT:  Hang on Mr. Kimber.
18              MR. GATES:  The impression I had from the hospital
19    is they had put the matter on calendar on October 29th and
20    so I thought the records would be here and maybe I could
21    assist getting the records, but turned out it wasn't on
22    calendar.
23              THE COURT:  I vaguely might remember that.
24              MR. GATES:  And so the -- you know, the records
25    still haven't even come to me.
26              THE COURT:  Um-hum.
27              MR. GATES:  And so it's -- you know, it's a real
28    problem.  We're just put in a position where we have to
```

```
 1    issue a whole lot of subpoenas for a whole lot of records
 2    because we can't just go there like we should and be able to
 3    look at the file.  But this is the -- when you boil it all
 4    down, this is a man who has no record.
 5             He obviously has a mental disability for which
 6    he's been on a LPS conservatorship.  My understanding is
 7    he's been on that conservatorship for 20 years.  I think he
 8    went on when he was 18, very shortly thereafter.
 9             And the Probation Department, counsel says they --
10    he's not amenable to their supervision but they seem to
11    think that this is an appropriate way to handle the case.  I
12    just don't see State prison as being appropriate for this
13    man.
14             THE COURT:  And Mr. Kimber wanted to make some
15    comment.  Is that --
16             DEFENDANT KIMBER:  Yeah, I just wanted to say that
17    I snapped, you know.  It was just -- I snapped when I hit
18    James Tatum.  I said he must be paranoid and I snapped and I
19    hit him, but I didn't mean to do that much damage to him.
20             THE COURT:  Okay.
21             DEFENDANT KIMBER:  I didn't know -- I didn't know
22    I was -- well, you understand.
23             THE COURT:  I do, sir.
24             DEFENDANT KIMBER:  You understand what I mean.
25             THE COURT:  Thank you.
26             DEFENDANT KIMBER:  Yeah.
27             THE COURT:  Okay.
28             Anything more from Probation?
```

```
 1                    MR. DELCASTILLO:  No, your Honor.

 2               THE COURT:  Mr. Van Camp.

 3               MR. VAN CAMP:  Well, whether we have the records

 4     or not I think what we would find from the records is the

 5     reason for the conservatorship, either he's a danger to

 6     himself or danger to others and was conserved and --

 7               THE COURT:  Or unable to take care of his food,

 8     clothing and shelter.

 9               MR. VAN CAMP:  That's possible.

10               And -- but the problem -- the issue, I think, is

11     okay, he's conserved out there, he's in the State hospital,

12     but what happens when he criminally assaults someone to the

13     point of injuring them in such a way.  And he knows what he

14     did, despite his mental problems and the reason for his

15     conservatorship.  He still committed a crime and knew what

16     he did when he did it.  So probation is not appropriate.

17               THE COURT:  Thank you.

18               Arraignment for judgment waived?

19               MR. GATES:  Yes, your Honor.

20               THE COURT:  Any legal cause?

21               MR. GATES:  No.

22               THE COURT:  Mr. Kimber, are you aware that this --

23     well, you are aware this case would result with you going to

24     State prison for up to four years.  It's that serious.  I am

25     going to, however, in this case grant probation but I'm

26     gonna change it from what the recommendation is.

27               DEFENDANT KIMBER:  Am I still gonna stay at Napa

28     State Hospital?
```

```
 1              THE COURT:  Yes, at least until you hit somebody
 2    else.  If you hit somebody else I'll send you to prison for
 3    four years.
 4              DEFENDANT KIMBER:  Okay, I understand.
 5              THE COURT:  Okay, got it?
 6              DEFENDANT KIMBER:  Yeah.
 7              THE COURT:  Here's the conditions.
 8              DEFENDANT KIMBER:  Okay.
 9              THE COURT:  Imposition of sentence is suspended,
10    you're granted formal probation for three years.
11              DEFENDANT KIMBER:  Uh-huh.
12              THE COURT:  The terms are that you obey all laws.
13    I'm not gonna order any confinement time at the State
14    hospital because I don't want to use it up.  I want -- if I
15    have to send you to prison for four years if you hit
16    somebody again I want to make sure I have those whole four
17    years.
18              DEFENDANT KIMBER:  Yeah.
19              THE COURT:  Okay?  You must obey all reasonable
20    orders of the Probation officer, you must take medication
21    prescribed by your doctor.  You must pay restitution to
22    Mr. Tatum in a manner and amount determined by the Probation
23    officer.
24              DEFENDANT KIMBER:  I'm not on the same ward, I got
25    sent behind them.
26              THE COURT:  This is the money -- I understand.
27    This is money for any damages which he had that might not
28    have been covered by Workmen's Comp or the other insurance.
```

```
 1              DEFENDANT KIMBER:  Uh-huh.

 2              THE COURT:  And you must provide two specimens as

 3    required under section 296 of the Penal Code.

 4              MR. GATES:  Does a 245 come under there?  I don't

 5    think it did.

 6              THE COURT:  I think this does.  If there's

 7    possibility of transfer of bodily fluids it seems entirely

 8    appropriate.

 9              MR. GATES:  Okay.

10              THE COURT:  So I'm essentially doing you a favor.

11    And I hope you appreciate it and I hope you take advantage

12    of it.

13              DEFENDANT KIMBER:  I understand, yeah.

14              THE COURT:  But remember there's four years in

15    State prison where there's no hospital awaiting you if you

16    hit somebody again, so just deep breaths and take care of

17    yourself.

18              DEFENDANT KIMBER:  Yeah, I understand it.

19              THE COURT:  Good luck.

20              DEFENDANT KIMBER:  Thank you.

21              So you're giving me how many days?

22              THE COURT:  Nothing.  Just probation.  I'm hanging

23    four years in State prison over your head.

24              DEFENDANT KIMBER:  No, but probation for how long?

25              THE COURT:  Three years.

26              DEFENDANT KIMBER:  Okay.

27              THE COURT:  Okay?

28              Thanks, Mr. Kimber.
```

```
 1              MR. VAN CAMP:  Your Honor, would you consider at
 2    least a book and release?
 3              THE COURT:  Sure, if that can be done.
 4              MR. VAN CAMP:  He needs to be booked and released
 5    in this case.
 6              THE COURT:  The Court will order that, also.  They
 7    can accomplish that in the NCDC.
 8                   (The proceedings were concluded.)
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
```

14

```
 1   STATE OF CALIFORNIA  )
                          )  ss:
 2   COUNTY OF NAPA       )

 3

 4              CERTIFICATE OF OFFICIAL REPORTER

 5        I, KAREN R. KRONQUEST, an Official Shorthand

 6   Reporter for the County of Napa do hereby certify:

 7        THAT on Thursday, November 6, 2003 at the hour of

 8   8:30 o'clock a.m. thereof, I reported in shorthand writing

 9   the proceedings had in the matter of THE PEOPLE OF THE STATE

10   OF CALIFORNIA versus CURTIS MICHAEL KIMBER, No. CR114643.

11        THAT I thereafter caused my said shorthand writing

12   to be transcribed into longhand typewriting.

13        THAT the foregoing pages 1 through 13 constitute

14   and are a full, true, correct and accurate transcription of

15   my said shorthand writing and a correct and verbatim record

16   of the proceedings so had and taken, as aforesaid.

17        DATED this _____ day of _____, 2007.

18

19

20
                    KAREN R. KRONQUEST, CSR No. 7482
21                  Official Shorthand Reporter
                    Napa, California
22

23                           --oOo--

24

25

26

27

28
```

KAREN R. KRONQUEST (707) 299-1190