

1  Curtis Kimber
   c/o Ann Williams.
2  2251 Nobili Ave.
   Santa Clara, CA 95051
3  In pro per

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| CURTIS KIMBER,<br><br>              Petitioner,<br><br>v.<br><br>ED FOULK, EXECUTIVE DIRECTOR, NAPA STATE (MENTAL) HOSPITAL,<br><br>              Defendant. | No. C 08-2062 JSW (PR)<br><br>PETITIONER'S RESPONSE TO RESPONDENT'S APPLICATION FOR ENLARGEMENT OF TIME. |
|---|---|

### Introduction

Petitioner Curtis Kimber received an "unsigned" copy of the Respondent's Application for Enlargement of time that is dated July 2, 2008, and as a courtesy Petitioner encourages Respondent to contact the California State Court of Appeal, First Appellate District, Appeal Case Number A119266 (appeal denied October 4, 2007), in addition to contacting the Napa County Superior Court, Case Number CR 114643CR, and Respondent will soon learn that Petitioner did appeal contrary to Respondent's claim on page 1 of her application.

With all due respect and not to cast aspersions,"[a] government lawyer in a civil action or administrative proceeding has the responsibility to seek justice and to develop a full and fair record... (*People ex rel. Clancy v. Superior Court* (1985) 39 Cal.3d 740, 746, citing ABA Code of Prof. Responsibility, EC 7-13.)

1

It appears Respondent has a heavy caseload and workload and may not have read the entire habeas petition because anyone reading the petition should have noticed that Petitioner wrote a long paragraph on page 7, Claim Two, Supporting Facts, and alleged that appointed appellate counsel dissuaded and cheated petitioner out of his appeal.

Petitioner empathizes with Respondent's position, but if the mental hospitals were not needlessly warehousing many, many, mental patients in their facilities for decades and often for life at exorbitant prices, then there would be more money for other state and federal services. In fact, Napa State Hospital received $180,264.00 "cost of care" for each inmate confined there in 2007 alone and there is a substantial increase in cost every year. (See enclosed Chart showing cost of care at Napa.)

This is quite a cost in any case but especially when a person considers that in 1994, psychiatrist Norman Sartorius (president of the World Psychiatric Association (1996-1999) declared at a meeting of a congress of the Association of European Psychiatrists, "the time when psychiatrists considered that they could cure the mentally ill is gone. In the future the mentally ill have to learn to live with their illness." (Lars Boegeskov, "Mentally Ill Have to Have Help—Not to be Cured," *Politiken* 19 Sept. 1994.) The following year, after more than $6 billion (€4.9 billion) in taxpayer money had been poured into psychiatric research, psychiatrist Rex Cowdry (Director of the U.S. National Institute of Mental Health) agreed with the WPA Chief and stated "We do not know the causes [of mental illness]. We don't have the methods of 'curing' these illnesses yet." (Declaration of Psychiatrist Norman Sartorius (president of the World Psychiatric Association (1996-1999) before congress of the Association of European Psychiatrists, Lars Boegeskov, "Mentally Ill Have to Have Help—Not to be Cured," *Politiken* 19 Sept. 1994.) Testimony given by Dr. Rex William Cowdry, Acting Director of the National Institute of Mental Health before a Subcommittee of the Committee on Appropriations, House of Representatives, 104th Congress, First Session, "Part 4, National Institutes of Health," section on the National Institute of Mental Health, Washington, D.C., 22 Mar. 1995, p. 1205.)

In 2002, Dr. Thomas Szasz, professor of psychiatry emeritus and co-founder of the Citizens Commission on Human Rights, astutely stated: "There is no blood or other biological test to ascertain the presence or absence of a mental illness, as there is for most bodily diseases. If such a test were developed (for what, theretofore, had been considered a psychiatric illness),

then the condition would cease to be a mental illness and would be classified, instead, as a symptom of a bodily disease." While psychiatrists now also claim that brain scans can detect certain mental disorders, a May 2004 article in *The Mercury News*, says that many doctors warn that the use of such scans is "unethical" and "dangerous," quite apart from not being scientifically validated. "The $2,500 (€2,040) evaluation offers no useful or accurate information." (Lisa M. Krieger, "Some Question Value of Brain Scan; Untested Tool Belongs in Lab Only, Experts Say," *The Mercury News*, 4 May 2004.)

        Claims or suggestions that today's brain imaging technology has proven that mental illness is caused by diseases or chemical imbalances in the brain are pure psychiatric fancy. Steven Hyman, director of the U.S. National Institute of Mental Health admits that use of such brain scans produce "pretty but inconsequential pictures of the brain." Quoted in the same article, psychiatrist M. Douglas Mar said, "There is no scientific basis for these claims [of using brain scans for psychiatric diagnosis]. At a minimum, patients should be told that SPECT is highly controversial." (*Ibid.*) "An accurate diagnosis based on a scan is simply not possible. I wish it were," stated Dr. Michael D. Devous from the Nuclear Medicine Center at the University of Texas Southwestern Medical Center. (*Ibid.*) (See also *Barefoot v. Estelle*, 463 U.S. 880 (1983); *People v. Murtishaw* (1981) 29 Cal.3d 733; *Cramer v. Tyars* (1979) 23 Cal.3d 131, 152, fn. 6, citing *Commonwealth v. Pomponi* (1971) 447 Pa. 154, 159; *Lee v. County Court of Erie County* (1970) 27 N.Y.2d 432, 439.)

        Petitioner could go on and on with this, a thousand times on and on, and Petitioner respectfully requests Respondent to give this habeas petition serious investigation and not only skim over the surface; but adhere to the principle that the Attorney General's Office is the representative, not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. (*People v. Conner* (1983) 34 Cal.3d 141, 143.)

        I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, memory, and belief.

Respectfully submitted,    *[signature: Curtis M. Kimber]*    Date: 7/14/08
Curtis Kimber

## Proof of Service by Mail

No. C 08-2062 JSW (PR)

      I Ann Williams, mother to Petitioner Curtis Kimber, declare that I mailed the original and a copy of the enclosed document titled "Petitioner's Response to Respondent's Application for Enlargement of Time," as a public service and for my son by placing a true copy enclosed in a sealed envelope with postage fully prepaid in the United States mail, addressed to the following places:

Office of the Clerk
United States District Court
Northern District of California
450 Golden Gate Ave.
San Francisco, California, 94102

Office of the Attorney General
JULIET B. HALEY, State Bar No. 162823
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, California 94102-7004

      I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on _____7/16/08_____ at Santa Clara, California 95051.
                                                            (Date)

_____Ann Williams_____        _____(Signature)_____
(Typewritten name)

12/21/2007        09:09        7072535411        NSH ED

NAPA STATE HOSPITAL
COST OF CARE PER FISCAL YEAR FOR EACH INDIVIDUAL

| Fiscal Year | Allocation Amount | Population | Cost per Individual |
|---|---|---|---|
| 2006/07 | $211,810,383 | 1,175 | $180,264.00 |
| 2005/06 | $191,399,492 | 1,157 | $165,427.00 |
| 2004/05 | $176,684,826 | 1,157 | $152,709.00 |
| 2003/04 | $162,793,625 | 1,044 | $155,933.00 |
| 2002/03 | $150,817,564 | 1,064 | $141,746.00 |
| 2001/02 | $151,126,365 | 1,092 | $138,394.00 |

Cost Per Meal

| Food cost FY 06/07 | $2,298,544.02 |
|---|---|
| Food cost per day | $6,297.38 |
| Food cost per patient per day | $5.24 |
| Food cost per meal per patient per day | $1.74 |



Public Information